# Complaint Exhibit 2

**Medicare Appeal Number:**
**1-14553059676**

# Medicare Reconsideration Decision

**JANUARY 17, 2025**

Nicholson & Easton, LLP
1330 SE 4th Avenue, Suite J
Fort Lauderdale, FL 33316

RE:
Beneficiary: See Attached List
Appellant: Quantum Practitioner Service

Dear Erin M. Ferber, P.A.:

This letter is to inform you of the decision on your Medicare appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown under the *Analysis* section.

The appeal decision is **UNFAVORABLE.** The Qualified Independent Contractor's (QIC's) decision is that Medicare will make no additional payment. More information on the decision is provided on the next pages. You are not required to take any action. If you disagree with the decision, you may appeal to an Administrative Law Judge (ALJ). You must file your appeal, in writing, within 60 days of receipt of this letter. For more information on how to appeal, see the page entitled "Important Information about Your Appeal Rights." The amount that must remain in controversy for ALJ hearing requests is $190. However, the ALJ will determine if your appeal case meets the $190 amount in controversy requirement for an ALJ hearing.

If this appeal is partially favorable or unfavorable, and it originated from an overpayment, First Coast Service Options, Inc., the Medicare Administrative Contractor (MAC), is responsible for processing this determination in accordance with standard Medicare methodologies. Any outstanding debts, prior coverage, and prior reimbursement will be taken into account when processing this decision. The MAC will issue a demand letter containing information regarding the collection process, interest accrual, and requesting an extended repayment schedule (ERS).

A copy of this letter was also sent to the parties shown below. C2C Innovative Solutions, Inc. (C2C), the QIC, was contracted by Medicare to review your appeal.

**Contact Information**

If you have questions, write or call:

***C2C Innovative Solutions, Inc.***
Medicare Part B South
QIC Contractor
P.O. Box 45301
Jacksonville, FL 32232-5301

*Telephone:*
904-224-2613

Who we are:
We are a QIC. Medicare has contracted with us to review your file and make an independent decision.

Sincerely,

Office of the Project Director
Medicare Part B South Project

CC: First Coast Service Options, Inc.
Quantum Practitioner Services, LLC

## Summary of Facts

From May 25, 2023, through August 30, 2023, Quantum Practitioner Service (provider) provided evaluation and management, amniotic fluid allograft and associated wound care services to multiple Medicare beneficiaries. The appellant submitted claims for these services for payment to First Coast Service Options, Inc, the Medicare Administrative Contractor (MAC), who made payment for the claims.

On January 17, 2024, SafeGuard Services the Unified Program Integrity Contractor (UPIC) sent the appellant a notification of overpayment review and additional documentation request (ADR). Specifically, the UPIC reviewed a 43 claim sample involving medical records of three (3) beneficiaries and 73 claim lines of service. Using that sample of claims, the UPIC found a denial rate of 100% and an overpayment amount of $2,251,763.60. The appellant was notified of the total overpayment amount on April 22, 2024 in the UPIC's Notice of Overpayment Findings. The reasons for denials included:

- Documentation submitted for review did not support a separately identifiable evaluation and management (E/M) service
- Documentation submitted for review did not support the medical necessity for the services billed as per Medicare and Local Coverage Determinations (LCD)

On May 8, 2024, the MAC issued overpayment notification letter (demand letter) to the appellant for the overpayment amount of $2,110,778.68.

The MAC received a redetermination request from Erin Ferber, P.A. of Nicholson & Easton, LLP, an authorized representative, dated June 4, 2024. From July 29, 2024, through July 31, 2024, the MAC completed the appeals and sent notice of the unfavorable decisions to the appropriate parties. The MAC's decisions were congruent with the UPIC denials.

On September 27, 2024, C2C Innovative Solutions, Inc., the Qualified Independent Contractor (QIC), received a reconsideration request for the services referenced in the *Individual Decision Spreadsheet* section of this letter

Documentation was evaluated to determine issues such as whether, in conjunction with other credible documentation, the services in question were actually provided or were provided as billed. The responsibilities of the QIC include rendering a decision only on the coverage or payment issues raised by the review request. The QIC may deny or reduce payment if it is believed the items or services at issue were not rendered or not rendered as billed.

The QIC review is a *de novo* review of the case based on the information provided from all prior levels of review and the appellant. The responsibilities of the QIC include rendering a decision only on the coverage or payment issues raised by the review request and the QIC's scope of review.

Key records contained in the case file include:

- Reconsideration Request dated September 27, 2024

- Expert Report of Adrianne J. Ross dated September 26, 2024
- MAC Redetermination Decision Letter dated July 29, 2024 –July 31, 2024
- Request for Redetermination dated June 4, 2024
- MAC Demand Letter dated May 8, 2024
- UPIC Notice of Overpayment Findings dated April 22, 2024
- Appointment of Representation dated February 29, 2024
- UPIC Medical Records Request dated January 17, 2024
- Medical Records
- Impax Product Information

## Explanation of Decision

A panel of clinical experts, consisting of a physician and a licensed healthcare professional, reviewed the claims.

The decision on your appeal is shown in the Conclusion section. (See below.)

The QIC has determined that Quantum Practitioner Service is responsible for the denied charges and return of the overpayment.

## Laws, Regulations, and Applicable Policies

The QIC performs reconsideration reviews in accordance with Medicare rules and regulations. The QIC has identified the laws, regulations, and policies below that pertain to this case. An analysis of the QIC's findings and the decision rendered will follow in the QIC's Claim Review section.

The QIC performs reconsideration reviews in accordance with Medicare rules and regulations. The QIC has identified the laws, regulations, and policies below that pertain to this case. An analysis of the QIC's findings and the decision rendered will follow in the QIC's *Medical Necessity Review* section.

### Medical Necessity

Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. Payment is excluded if the medical necessity for the service cannot be substantiated. [Section 1862(a)(1)(A) of the Social Security Act (the Act), and the Centers for Medicare & Medicaid (CMS) Internet-Only Manual (IOM), Publication (Pub.) 100-02, Medicare Benefit Policy Manual (MBPM), Chapter 16, Section 20]

### Documentation Requirements

Medicare guidelines place the burden upon the provider to furnish information that may be necessary to determine if payment is due. The service rendered to the patient must be documented in a clear and understandable fashion. The information must be clearly displayed in the medical records. [Section 1833(e) of the Act and 42 Code of Federal Regulations (CFR) Section 424.5(a)(6)]

### Reviewing Claims in the Absence of Policies and Guidelines

The MACs, Comprehensive Error Rate Testing (CERT), Recovery Audit Contractors (RACs), and Zone Program Integrity Contractors (ZPICs) have the discretion to review claims, in the absence of polices, whether a National Coverage Determination (NCD), coverage provision in an interpretive Medicare manual, or Local Coverage Determination (LCD) exists for that service. When making individual claim determinations, they shall determine that the service in question is covered based on whether the service meets all of the conditions listed in Section 3.6.2.1, which is noted below. [CMS IOM, Pub. 100-08, Medicare Program Integrity Manual (MPIM), Chapter 3, Section 3.3.3]

**Coverage Determinations**

Contractors shall deny an item or service if it does not meet any of the conditions listed below:

- The item or service does not fall into a Medicare benefit category.
- The item or service is statutorily excluded on grounds other than Section 1862(a)(1)(A) of the Act.
- The item or service is not reasonable and necessary under Section 1862(a)(1)(A) of the Act.
- The item or service does not meet other Medicare program requirements for payment.

[CMS IOM, Pub. 100-08, MPIM, Chapter 3, Section 3.6.2.1]

**Reasonable and Necessary Criteria**

CMS issues NCDs that specify whether certain items, services, procedures or technologies are reasonable and necessary under Section 1862(a)(1)(A) of the Act. In the absence of an NCD, Medicare contractors are responsible for determining whether services are reasonable and necessary. If no LCD exists for a particular item or service, the MACs, CERT, RACs, and ZPICs shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

- It is safe and effective;
- It is not experimental or investigational; and
- It is appropriate, including the duration and frequency in terms of whether the service or item is:
  - Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
  - Furnished in a setting appropriate to the beneficiary's medical needs and condition;
  - Ordered and furnished by qualified personnel; and,
  - One that meets, but does not exceed, the beneficiary's medical need.

[CMS IOM, Pub. 100-08, MPIM, Chapter 3, Section 3.6.2.2]

**Particular Services Excluded From Coverage**

Any services are excluded from coverage that are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. [42 CFR Section 411.15(k)(1)]

**Services Related to and Required as a Result of Services Which Are Not Covered Under Medicare**

Medical and hospital services are sometimes required to treat a condition that arises as a result of services that are not covered because they are determined to be not reasonable and necessary or because they are excluded from coverage for other reasons.

Services "related to" non-covered services (e.g., cosmetic surgery, non-covered organ transplants, non-covered artificial organ implants, etc.), including services related to follow-up care and complications of non-covered services which require treatment during a hospital stay in which the non-covered service was performed, are not covered services under Medicare. Services "not related to" non-covered services are covered under Medicare. [CMS IOM, Pub. 100-02, MBPM, Chapter 16, Section 180]

**Limitation on Liability**

With regard to limitation on liability, Section 1879 of the Act provides as follows:

(a) Where-

(1) a determination is made that, by reason of Section 1862(a)(1) or (9) of the Act, or by reason of a coverage denial described in subsection (g), payment may not be made under part A or part B of this title for any expenses incurred for items or services furnished an individual by a provider of services or by another person pursuant to an assignment under Section 1842(b)(3)(B)(ii), and

(2) both such individual and such provider of services or such other person, as the case may be, did not know, and could not reasonably have been expected to know, that payment would not be made for such items or services under such part A or part B, then to the extent permitted by this title, payment shall, notwithstanding such determination, be made for such items or services (and for such period of time as the Secretary finds will carry out the objectives of this title), as though Section 1862(a)(1) and 1862(a)(9) did not apply and as though the coverage denial described in subsection (g) had not occurred. [Section 1879 of the Act]

**When to Make Limitation on Liability Decisions**

A - Initial Claims

In implementing the limitation on liability provision, the contractor makes a coverage decision before making a limitation on liability decision. Section 1879 of the Act provides that limitation on liability can be allowed only in cases:

> Where - (1) a determination is made that, by reason of Section 1862(a)(l) or (9) or by reason of a coverage denial described in subsection (g) of the Act, payment may not be made under Part A or Part B of this title for any expenses incurred for items or services furnished an individual by a provider of services... (Section 1879(a)(1) of the Act.)

Only after the contractor makes a decision that care is not reasonable or necessary, is custodial, is not reasonable and necessary for the palliation or management of terminal illness in hospice denials, or does not meet the homebound or intermittent nursing care requirements in home health service denials, or does not meet the "terminally ill" condition for hospice care, should a determination be made regarding

limitation on liability. In every such case, there will be two parts to the limitation on liability determination:

1. Whether and when the beneficiary knew or should have known that the services were non-covered, and
2. Whether and when the provider knew or should have known that the services were non-covered.

In any case where the provider gave the beneficiary notice that the services would be non-covered, the contractor will find that the provider knew that the services were non-covered.

B – Redetermination

At the redetermination level, again the contractor first makes a determination on the coverage issue. It considers the question of limitation on liability, if applicable, only if the initial adverse coverage decision is wholly or partially affirmed. [CMS IOM, Pub. 100-04, Medicare Claims Processing Manual (MCPM), Chapter 30, Section 100.2]

**Fault**

With regard to the application of fault, Medicare regulations provide as follows:

a) Any payment under this title to any provider of services or other person with respect to any items or services furnished any individual shall be regarded as a payment to such individual.

b) Where –

> (1) more than the correct amount is paid under this title to a provider of services or other person for items or services furnished an individual and the Secretary determines (A) that, within such period as he may specify, the excess over the correct amount cannot be recouped from such provider of services or other person, or (B) that such provider of services or other person was without fault with respect to the payment of such excess over the correct amount. [Section 1870 of the Act]

**Determining Provider, Practitioner, or Supplier Liability**

The contractor considers a provider, physician, or other supplier without fault, if it exercised reasonable care in billing for, and accepting, the payment; i.e.,

- It made full disclosure of all material facts; and
- On the basis of the information available to it, including, but not limited to, the Medicare instructions and regulations, it had a reasonable basis for assuming that the payment was correct, or, if it had reason to question the payment; it promptly brought the question to the contractor's attention.

[CMS IOM, Pub. 100-06, Medicare Financial Management Manual (MFMM), Chapter 3, Section 90]

**Evaluation and Management**

As of January 1, 2023, for most evaluation and management (E/M) visit families, practitioners will select visit level based on the level of medical decision making (MDM) or the amount of time spent by the physician or non-physician practitioner. For some types of visits (such as emergency department visits and critical care), in accordance with their CPT codes, practitioners do not have this choice and will use only MDM or only time to bill. The CPT E/M Guidelines for MDM apply. For all E/M visits, history and physical exam must be performed in accordance with code descriptors, but history and exam no longer impact visit level selection. When practitioner time is used to select visit level, the full time must be completed; the general CPT rule regarding the midpoint for certain timed services does not apply. Medical necessity of a service is the overarching criterion for payment in addition to the individual requirements of an E/M visit code. It would not be medically necessary or appropriate to bill a higher level of E/M service when a lower level of service is warranted. The volume of documentation should not be the primary influence upon which a specific level of service is billed. Documentation should support the level of service reported. [CMS IOM, Pub. 100-04, MCPM, Chapter 12, Section 30.6.1]

**Modifier 25**

Medicare requires that Current Procedural Terminology (CPT) modifier 25 should only be used on claims for evaluation and management (E/M) services, and only when these services are provided by the same physician (or same qualified non-physician practitioner) to the same patient on the same day as another procedure or other service. Both the medically necessary E/M service and the procedure must be appropriately and sufficiently documented by the physician or qualified non-physician practitioner in the patient's medical record to support the claim for these services, even though the documentation is not required to be submitted with the claim. [CMS IOM, Pub. 100-04, MCPM, Chapter 12, Section 30.6.6]

**Overpayments**

Overpayments are Medicare payments a provider or beneficiary has received in excess of amounts due and payable under the statute and regulations. Once a determination of an overpayment has been made, the amount is a debt owed by the debtor to the United States (U.S.) Government. Under the Federal Claims Collection Act of 1966, as amended, each agency of the Federal Government (pursuant to regulations jointly promulgated by the Attorney General and the Comptroller General of the U.S.) must attempt collection of claims of the Federal Government for money arising out of the activities of the agency. The Contractor will not be liable for overpayments it makes to debtors in the absence of fraud or gross negligence on its part; however, once a Contractor determines an overpayment has been made, it must attempt recovery of overpayments in accordance with CMS regulations. The Federal Claims Collection Act requires timely and aggressive efforts to recover overpayments, including efforts to locate the debtor where necessary, demands for repayment, and establishment of repayment schedules, suspension of interim payments by intermediaries to institutional providers, and recoupment or setoff, where appropriate. [CMS IOM, Pub. 100-06, MFMM, Chapter 3, Section 10]

## Analysis

The following services are at issue for reconsideration:

**15271** - Application of skin substitute graft to trunk, arms, legs, total wound surface area up to 100 square centimeters (sq cm); first 25 sq cm or less wound surface area

**15272** - Application of skin substitute graft to trunk, arms, legs, total wound surface area up to 100 sq cm; each additional 25 sq cm wound surface area, or part thereof
**15273** - Application of skin substitute graft to trunk, arms, legs, total wound surface area greater than or equal to 100 sq cm; first 100 sq cm wound surface area, or 1% of body area of infants and children
**15275** - Application of skin substitute graft to face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits, total wound surface area up to 100 sq cm; first 25 sq cm or less wound surface area
**15276** - application of skin substitute graft to face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits, total wound surface area up to 100 sq cm; each additional 25 sq cm wound surface area, or part thereof
**15277** - Application of skin substitute graft to face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits, total wound surface area greater than or equal to 100 sq cm; first 100 sq cm wound surface area, or 1% of body area of infants and children
**15278** - Application of skin substitute graft to face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits, total wound surface area greater than or equal to 100 sq cm; each additional 100 sq cm wound surface area, or part thereof, or each additional 1% of body area of infants and children, or part thereof
**99348** - Home or residence visit for the evaluation and management of an established patient, which requires a medically appropriate history and/or examination and low level of medical decision making. When using total time on the date of the encounter for code selection, 30 minutes must be met or exceeded.
**99349** - Home or residence visit for the evaluation and management of an established patient, which requires a medically appropriate history and/or examination and moderate level of medical decision making. When using total time on the date of the encounter for code selection, 40 minutes must be met or exceeded.
**Q4262** - Dual Layer Impax Membrane, per sq cm

The following modifiers are at issue:

**25** - Significant, Separately Identifiable Evaluation and Management Service by the Same Physician or Other Qualified Health Care Professional on the Same Day of the Procedure or Other Service
**59** - Distinct Procedural Service
**76** - Repeat Procedure or Service by Same Physician or Other Qualified Health Care Professional
**JZ** - Zero drug amount discarded/not administered to any patient
**XU** - Unusual nonoverlapping service, the use of a service that is distinct because it does not overlap usual components of the main service

## Appellant Arguments and QIC Responses

**Appellant Argument**: The appellant submitted a brief, which cited to various laws, regulations, policies and case law in relation to the services at issue. The appellant argues that First Coast Service Option's analysis and conclusion is erroneous here because the Impax Membrane was used primarily as a barrier or protective covering for the wound which is expressly a homologous use and therefore not investigational and therefore covered.

The appellant argues the FDA generally regulates HCT/P's under the framework set forth in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." The Impax Membrane is specifically regulated by section 361 of the Public Health Service Act ("PHS") under 21 CFR Part 1271, as evidenced by the FDA Tissue Reference Group (TRG) letters, which FCSO relied upon in its redetermination decision.1 An HCT/P is regulated solely under section 361 of the PHS Act and 21 CFR Part 1271 if it meets all of the following criteria: The Impax Membrane is minimally manipulated, is intended for homologous use (as reflected by the labeling, advertising, and other indications of the manufacturer's objective intent), does not involve the combination of the cells or \ tissues with another article, and does not have a systemic effect and is not dependent on the metabolic activity of living cells for its primary function. Therefore, it satisfies the criteria outlined in 21 CFR 1271.10 and is regulated by section 361 of the PHS Act. Therefore, the services were reasonable and necessary, and no overpayment exists.

**QIC Response**: The Appellant's issue regarding the MAC denying the service as investigational is addressed by the QIC in a new and independent review. The QIC conducts a thorough review of the medical records in conjunction with applicable law, regulation and policy and provides a complete and detailed decision. The QIC also found that the services were not reasonable or necessary as required in CMS IOM, Pub. 100-08, MPIM, Chapter 3, Section 3.6.2.2. Additionally, while the service is eligible to be marketed under section 361 of the PHS Act, there is insufficient support from double-blinded, randomized human clinical trials for safety and effectiveness when used as a skin substitute wound covering to treat the specific condition(s) at issue. Further information regarding the QIC's detailed review of the claims at issue can be found in the section titled, *Medical Necessity Review*.

Medicare will only pay for items or services that are reasonable and necessary under section 1862(a)(1)(A) of the Social Security Act. Historically, CMS has interpreted reasonable and necessary to mean that the item or service is safe, effective, not experimental or investigational, and appropriate, which includes that it is furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member. 54 Fed. Reg. 4302, 4304 (Jan. 30, 1989), 60 Fed. Reg. 48417, 48418 (Sept. 19, 1995), 85 Fed. Reg. 54327, 54328 (Sept. 1, 2020). This long-standing CMS policy is codified in CMS IOM, Pub. 100-08, MPIM, Chapter 3, Section 3.6.2.2. CMS has also stated that FDA categorization of a product, or approval for clearance or sale, does not automatically translate or entitle the product to Medicare coverage. 78 Fed. Reg. 48164, 48165 (Aug. 7, 2013); 42 C.F.R. 405.201(a)(1).

**Appellant Argument**: Quantum is without fault with respect to any technical deficiency that might exist, particularly with respect to any billing or documentation requirement the carrier now seeks to impose which is not expressly applicable to the biologics at issue here and/or was not known to Quantum at the time the services at issue were rendered and billed. The biologics applied were properly documented and billed in good faith. Pursuant to the Social Security Act, Quantum should not be required to re-pay Medicare for the allografts at issue under the circumstances presented here.

**QIC Response:** Section 1870 of the Act permits Medicare to not recover inappropriate payments with respect to an individual deemed without fault in having caused the overpayment. For the "without fault" provision to apply, the individual must have complied with all pertinent regulations and instruction materials. These include CPT procedure code definitions and

Medicare bulletins. The individual is expected to have had a reasonable basis for assuming the payments received were correct or, if there was reason to question the payment, to promptly bring such a question to the contractor's attention. In addition, the individual is expected to have made full and accurate disclosure of material facts.

It is important that the management personnel of any medical practice treating a significant number of Medicare beneficiaries understand the conditions governing which services will be reimbursed under the Medicare Program. Pertinent information was available from the Law and Regulations, from Medicare Bulletins and from your peers in the medical community. With respect to acceptance of payment, 20 CFR Section 404.507 indicates that what constitutes fault depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person resulted from whether he either knew or could have been expected to know the payment was incorrect. In this instance, there is nothing in the case file that which would indicate that the appellant could not have been expected to know that the payment was incorrect. Providers in the Medicare Program are presumed to have knowledge of published Medicare coverage criteria, pursuant to 42 CFR Section 411.406. Lacking any information that the provider is "without fault"; we have found that Section 1870 of the Act does not apply and that you Appellant is liable for the overpayment.

**Appellant Argument:** The appellant requests a complete copy of the Medicare carrier's/contractors file relating to this review.

**QIC Response**: A copy of the file will be provided separately

## Medical Necessity Review

At issue are 41 claims involving amniotic membrane allograft services, the application of a wound substitute, and home or residence visit for the evaluation and management (E/M) of a new or established patient for the beneficiaries listed below. The services were denied at post-payment review by the UPIC as not medically reasonable. The MAC's redetermination decision was congruent with the UPIC review denials.

After a review of the case file, the QIC finds the debridement services are not reasonable and necessary for payment. The appellant contends the services were medically necessary. Medicare guidelines place the burden upon the provider to furnish information that may be necessary to determine if payment is due. The services rendered to the patient must be documented in a clear and understandable fashion. The information must be clearly displayed in the medical records. In the absence of NCDs/LCDs, contractors must meet the requirements of the CMS IOM, Pub. 100-08, MPIM, Chapter 3, Section 3.6.2.2.

Upon review of the documentation, the QIC finds that the beneficiaries were treated for non-healing wounds of lower extremities involving the legs, ankles and feet. The provider submitted documentation which included progress notes and procedure notes. The MAC denial reasoning included the non-homologous use of Impax Membrane which is considered an investigational use and is not reasonable and necessary. Because the skin substitute graft was denied as not reasonable and necessary, the related application of skin of substitute graft to wound is also considered not reasonable and necessary. In addition, the documentation did not support a significant and separately identifiable evaluation and management service outside of the minor procedure performed/billed on the same date of service.

Therefore, the residence visit for established patient with moderate level of medical decision making is not supported.

Further review of the records support that wound debridement and application of the amniotic wound covering services were provided to the beneficiaries. However, the submitted documentation does not include a description of the previous wound care treatments provided to the beneficiaries. The record did not detail why wound healing was not progressing as expected or why the wounds did not respond to any previous treatments provided. The documentation did not include notation of tissue removed, or the method used to debride the wounds. In many of the notes, the characteristics of the wound(s) were not documented, nor was there a description of the wound after the debridement. The documentation did not address the management for any underlying conditions that were a contributing factor to the beneficiaries' wounds. The submitted documentation does not adequately support the services provided.

Dual Layer Impax Membrane, per square centimeter (sq cm) (Q4262), is an amniotic liquid allograft derived from human amniotic tissue. The amniotic membrane is separated from the placenta and morselized into particulate form, then combined with amniotic fluid components to form the allograft. After a review of the case file, the QIC notes that the provider/appellant submitted several journal articles which reportedly support the use of service Q4262 at issue, for the use as a barrier that protects wounds. Although the service is eligible to be marketed under section 361 of the PHS Act, there is insufficient support from double-blinded, randomized human clinical trials for safety and effectiveness when used as a skin substitute wound covering to treat the specific condition(s) at issue. Given the lack of peer-reviewed, evidence-based literature in support of the Impax Membrane, per sq cm (Q4262), it is the QIC's determination that the provider/appellant has not met their burden of showing that the services meet the medically reasonable and necessary requirements of Section 1862(a)(1)(A) of the Act and CMS IOM 100-08, MPIM, Chapter 3, Section 3.6.2.2. The related services (15271, 15272, 15273, 15275, 12576, 15277, and 15278) are not separately payable as they are dependent on the primary services.

Included in the appeal were three claim lines reviewed for E/M services, codes 99348 and 99349 (defined above). Each claim included the 25 modifier indicating a significant, separate identified procedure was performed at the time of the E/M visit. In these cases, none of the E/M services included documentation components to support there was a separately identifiable service. According to the CMS IOM, Pub. 100-04, MCPM, Chapter 12, Section 40.1, visits by the same physician on the same day as a minor surgery or endoscopy are included in the payment for the procedure unless a significant, separately identifiable service is also performed. The QIC finds that the documentation did not support a significant separately identifiable E/M service from the amniotic allograft service provided on the same day

## Conclusion

The decision of the QIC is unfavorable. The QIC finds the services did not meet the requirements to be considered reasonable and necessary in the treatment of the patients. After careful consideration, the QIC finds an overpayment was made. The provider is responsible to return the overpaid amount.

# Individual Decision Spreadsheet

**Decision key for individual spreadsheet:**

**U1** - The documentation does not support the service as reasonable and necessary.

**U2** – The service is related to a non-covered service and is therefore, not medically necessary.

**U3** - The documentation did not support a significant separately identifiable E/M service from the skin substitute wound covering service provided on the same day.

| Internal Control Number | Medicare Number Redacted | Beneficiary Name | Date of Service | Procedure Code | Modifier | EXPLANATION | DECISION |
|---|---|---|---|---|---|---|---|
| 9724122167000 | [redacted] | R. M[redacted] | 05/25/2023 | Q4262 | XU | U1 | Unfavorable |
| 9724122167010 | [redacted] | R. M[redacted] | 05/25/2023 | Q4262 | 76 | U1 | Unfavorable |
| 9724122167020 | [redacted] | R. M[redacted] | 05/25/2023 | Q4262 | | U1 | Unfavorable |
| 9724122167020 | [redacted] | R. M[redacted] | 05/25/2023 | 15277 | | U2 | Unfavorable |
| 9724122167030 | [redacted] | R. M[redacted] | 06/01/2023 | Q4262 | | U1 | Unfavorable |
| 9724122167030 | [redacted] | R. M[redacted] | 06/01/2023 | 15277 | | U2 | Unfavorable |
| 9724122167040 | [redacted] | R. M[redacted] | 06/01/2023 | Q4262 | 76 | U1 | Unfavorable |
| 9724122167050 | [redacted] | R. M[redacted] | 06/01/2023 | Q4262 | XU | U1 | Unfavorable |

| Internal Control Number | Medicare Number Redacted | Beneficiary Name | Date of Service | Procedure Code | Modifier | EXPLANATION | DECISION |
|---|---|---|---|---|---|---|---|
| 9724122167060 | [redacted] | R. M[redacted] | 06/01/2023 | Q4262 | XU | U1 | Unfavorable |
| 9724122167070 | [redacted] | R. M[redacted] | 05/25/2023 | Q4262 | XU | U1 | Unfavorable |
| 9724122167080 | [redacted] | R. M[redacted] | 06/08/2023 | Q4262 | 5976 | U1 | Unfavorable |
| 9724122167090 | [redacted] | R. M[redacted] | 06/08/2023 | Q4262 | 59 | U1 | Unfavorable |
| 9724122167100 | [redacted] | R. M[redacted] | 06/08/2023 | 15277 | | U2 | Unfavorable |
| 9724122167110 | [redacted] | R. M[redacted] | 06/08/2023 | Q4262 | 76 | U1 | Unfavorable |
| 9724122167120 | [redacted] | R. M[redacted] | 06/28/2023 | Q4262 | | U1 | Unfavorable |
| 9724122167120 | [redacted] | R. M[redacted] | 06/28/2023 | 15278 | | U2 | Unfavorable |
| 9724122167130 | [redacted] | R. M[redacted] | 06/28/2023 | Q4262 | 76 | U1 | Unfavorable |
| 9724122167140 | [redacted] | R. M[redacted] | 06/08/2023 | 15278 | | U2 | Unfavorable |
| 9724122167160 | [redacted] | D. O[redacted] | 06/15/2023 | Q4262 | 76 | U1 | Unfavorable |
| 9724122167180 | [redacted] | D. O[redacted] | 06/15/2023 | Q4262 | XU | U1 | Unfavorable |
| 9724122167190 | [redacted] | D. O[redacted] | 06/15/2023 | Q4262 | | U1 | Unfavorable |
| 9724122167190 | [redacted] | D. O[redacted] | 06/15/2023 | 15273 | | U2 | Unfavorable |

| Internal Control Number | Medicare Number Redacted | Beneficiary Name | Date of Service | Procedure Code | Modifier | EXPLANATION | DECISION |
|---|---|---|---|---|---|---|---|
| 9724122167200 | [redacted] | D. [redacted] | 07/06/2023 | Q4262 | JZ | U1 | Unfavorable |
| 9724122167200 | [redacted] | D. [redacted] | 07/06/2023 | 15273 | | U2 | Unfavorable |
| 9724122167210 | [redacted] | D. [redacted] | 06/21/2023 | 15274 | | U2 | Unfavorable |
| 9724122167210 | [redacted] | D. [redacted] | 06/21/2023 | Q4262 | | U1 | Unfavorable |
| 9724122167210 | [redacted] | D. [redacted] | 06/21/2023 | 15273 | | U2 | Unfavorable |
| 9724122167220 | [redacted] | D. [redacted] | 06/21/2023 | Q4262 | 76 | U1 | Unfavorable |
| 9724122167230 | [redacted] | D. [redacted] | 06/28/2023 | 15274 | | U2 | Unfavorable |
| 9724122167230 | [redacted] | D. [redacted] | 06/28/2023 | Q4262 | | U1 | Unfavorable |
| 9724122167230 | [redacted] | D. [redacted] | 06/28/2023 | 15273 | | U2 | Unfavorable |
| 9724122167240 | [redacted] | D. [redacted] | 06/28/2023 | Q4262 | 76 | U1 | Unfavorable |
| 9724122167250 | [redacted] | D. [redacted] | 06/28/2023 | Q4262 | XU | U1 | Unfavorable |
| 9724122167260 | [redacted] | D. [redacted] | 06/08/2023 | Q4262 | XU | U1 | Unfavorable |
| 9724122167270 | [redacted] | D. [redacted] | 06/08/2023 | Q4262 | 76 | U1 | Unfavorable |
| 9724122167280 | [redacted] | D. [redacted] | 06/08/2023 | Q4262 | 7659 | U1 | Unfavorable |

| Internal Control Number | Medicare Number Redacted | Beneficiary Name | Date of Service | Procedure Code | Modifier | EXPLANATION | DECISION |
|---|---|---|---|---|---|---|---|
| 9724122167290 | [redacted] | D. O[redacted] | 07/13/2023 | Q4262 | JZ | U1 | Unfavorable |
| 9724122167290 | [redacted] | D. O[redacted] | 07/13/2023 | 15273 | | U2 | Unfavorable |
| 9724122167300 | [redacted] | D. O[redacted] | 07/13/2023 | Q4262 | JZXU | U1 | Unfavorable |
| 9724122167320 | [redacted] | D. O[redacted] | 08/30/2023 | 15272 | | U2 | Unfavorable |
| 9724122167320 | [redacted] | D. O[redacted] | 08/30/2023 | Q4262 | JZ | U1 | Unfavorable |
| 9724122167320 | [redacted] | D. O[redacted] | 08/30/2023 | 15271 | | U2 | Unfavorable |
| 9724122167330 | [redacted] | D. O[redacted] | 07/26/2023 | Q4262 | JZ | U1 | Unfavorable |
| 9724122167330 | [redacted] | D. O[redacted] | 07/26/2023 | 15273 | | U2 | Unfavorable |
| 9724122167340 | [redacted] | D. O[redacted] | 07/26/2023 | Q4262 | JZXU | U1 | Unfavorable |
| 9724122167350 | [redacted] | D. O[redacted] | 08/09/2023 | 99349 | 25 | U3 | Unfavorable |
| 9724122167350 | [redacted] | D. O[redacted] | 08/09/2023 | 15272 | | U2 | Unfavorable |
| 9724122167350 | [redacted] | D. O[redacted] | 08/09/2023 | Q4262 | JZ | U1 | Unfavorable |
| 9724122167350 | [redacted] | D. O[redacted] | 08/09/2023 | 15271 | | U2 | Unfavorable |
| 9724122167360 | [redacted] | D. O[redacted] | 08/16/2023 | 15272 | | U2 | Unfavorable |

| Internal Control Number | Medicare Number Redacted | Beneficiary Name | Date of Service | Procedure Code | Modifier | EXPLANATION | DECISION |
|---|---|---|---|---|---|---|---|
| 9724122167360 | [redacted] | D. [redacted] | 08/16/2023 | Q4262 | JZ | U1 | Unfavorable |
| 9724122167360 | [redacted] | D. [redacted] | 08/16/2023 | 15271 | | U2 | Unfavorable |
| 9724122167370 | [redacted] | J. [redacted] | 07/06/2023 | 15275 | | U2 | Unfavorable |
| 9724122167380 | [redacted] | J. [redacted] | 07/28/2023 | 15276 | | U2 | Unfavorable |
| 9724122167380 | [redacted] | J. [redacted] | 07/28/2023 | Q4262 | JZ | U1 | Unfavorable |
| 9724122167380 | [redacted] | J. [redacted] | 07/28/2023 | 15275 | | U2 | Unfavorable |
| 9724122167390 | [redacted] | J. [redacted] | 08/24/2023 | Q4262 | JZXU | U1 | Unfavorable |
| 9724122167400 | [redacted] | J. [redacted] | 08/24/2023 | 99348 | 25 | U3 | Unfavorable |
| 9724122167400 | [redacted] | J. [redacted] | 08/24/2023 | Q4262 | JZ | U1 | Unfavorable |
| 9724122167400 | [redacted] | J. [redacted] | 08/24/2023 | 15275 | | U2 | Unfavorable |
| 9724122167410 | [redacted] | J. [redacted] | 07/12/2023 | 15276 | | U2 | Unfavorable |
| 9724122167410 | [redacted] | J. [redacted] | 07/12/2023 | Q4262 | JZ | U1 | Unfavorable |
| 9724122167410 | [redacted] | J. [redacted] | 07/12/2023 | 15275 | | U2 | Unfavorable |
| 9724122167420 | [redacted] | J. [redacted] | 08/10/2023 | 99349 | 25 | U3 | Unfavorable |

| Internal Control Number | Medicare Number Redacted | Beneficiary Name | Date of Service | Procedure Code | Modifier | EXPLANATION | DECISION |
|---|---|---|---|---|---|---|---|
| 9724122167420 | [redacted] | J. S[redacted] | 08/10/2023 | Q4262 | JZ | U1 | Unfavorable |
| 9724122167420 | [redacted] | J. S[redacted] | 08/10/2023 | 15275 | | U2 | Unfavorable |
| 9724122167430 | [redacted] | J. S[redacted] | 08/10/2023 | Q4262 | JZXU | U1 | Unfavorable |

## Who is Responsible for the Bill?

When services are denied as not medically reasonable and necessary under the Medicare program, we must also determine if the provider or beneficiary is liable for payment. Section 1879(a)-(g) of the Act, also referred to as "the limitation on liability provision," spells out how to arrive at this decision.

Medicare regulations, 42 CFR Section 424.5(a)(6), require providers to be familiar with Medicare rules and regulations. In addition, 42 CFR Section 411.406 provides criteria for determining when a provider is responsible for payment for the services considered not reasonable and necessary. This regulation states that providers are presumed to have knowledge of published Medicare coverage rules and regulations, CMS Rulings, Medicare coverage policies in First Coast Service Options, Inc. bulletins or websites, and acceptable standards within the local community. We find that Quantum Practitioner Service is liable for the denied charges and found at fault in causing an overpayment for the denied services. The records did not support the beneficiaries were notified in advance that Medicare would likely deny payment for the services at issue. The beneficiaries cannot be charged for these services. [Section 1870 of the Act]

## Other Important Information

If you appeal this decision, the ALJ will not consider new evidence unless you show good cause for not presenting the evidence to the QIC. This requirement does not apply to beneficiaries, unless a provider or supplier represents the beneficiary.

For information on how to appeal this decision, refer to the page titled "Important Information about Your Appeal Rights." If you need more information or have any questions, please call 1-800-Medicare (1-800-633-4227) [TTY/TDD: 1-800-486-2048] or the phone number listed on page one.

You can receive copies of statutes, regulations, policies, and/or manual instructions we used to arrive at this decision. For instructions on how to do this, please see 'Other Important Information' on the page entitled "Important Information about Your Appeal Rights." The request must be submitted in writing to this office.

# IMPORTANT INFORMATION ABOUT YOUR APPEAL RIGHTS

## Your Right to Appeal this Decision

If you disagree with this decision, you may appeal the decision to an Administrative Law Judge (ALJ) at the Office of Medicare Hearings and Appeals (OMHA).

As of 1/1/2025, the amount that must remain in controversy for ALJ hearing requests is $190. A claim can be combined ("aggregated") with others to reach this amount if: (1) the other claims have also been decided or dismissed by a QIC; (2) all of the claims are listed on your request for review; (3) your request for review is filed within 60 days of receipt of all of the QIC dismissals being appealed; and (4) you explain why you believe the claims involve similar or related services.

You can find more information about your right to an ALJ review of a QIC dismissal at www.hhs.gov/omha or by calling 1-855-556-8475. This is a toll free call.

## How to Appeal

To exercise your right to appeal, you must file a written request for an ALJ hearing within **60 days** of receiving this letter.

When preparing your request for hearing, please use **Form CMS-20034 A/B**, available at: www.hhs.gov/omha/forms/index.html

If you do not use the form, your request for hearing must include the following:

1. The beneficiary's name, address, and Medicare health insurance claim number;
2. The name and address of the person appealing, if the person is not the beneficiary;
3. The representative's name and address, if any;
4. The Medicare appeal number listed on the front page of this reconsideration notice;
5. The dates of service for the claims at issue;
6. The reasons why you disagree with the QIC's reconsideration; and
7. A statement of any additional evidence to be submitted and the date it will be submitted.

Please **do not attach evidence to your hearing request**. If you have evidence to submit, please submit the evidence directly to the ALJ when your case is assigned.
Mail your hearing request to (tracked mail is suggested):

**HHS OMHA Central Operations**
**1001 Lakeside Avenue, Suite 930**
**Cleveland, OH 44114-1158**

If you are a Medicare beneficiary filing a request for an ALJ hearing, please also include "**Attn: Beneficiary Mail Stop**" in the address above.

If your request for hearing is being filed late, you must explain why your request is being filed late.

The ALJ will require proof that you sent a copy of the request for hearing to the other parties who received a copy of the QIC reconsideration (for example, the beneficiary or provider/supplier). Please **do not** send a copy of your hearing request to the QIC that issued the reconsideration or to the Medicare Administrative Contractor that issued the redetermination.

Please **do not** submit multiple requests for hearing for the same QIC reconsideration.

For additional filing tips, go to www.hhs.gov/omha or call 1-855-556-8475 for a copy.

## Who May File an Appeal

You or someone you name to act for you (your **appointed representative**) may file an appeal. You can name a relative, friend, advocate, attorney, doctor, or someone else to act for you.

If you want someone to act for you, you and your appointed representative must sign, date a statement naming that person to act for you and send it with your request for hearing. Call 1-800-MEDICARE (1-800-633-4227) to learn more about how to name a representative.

## Help With Your Appeal

You can have a friend or someone else help you with your appeal. If you have any questions about payment denials or appeals, you can also contact your State Health Insurance Assistance Program (SHIP). For information on contacting your local SHIP, call 1-800-MEDICARE (1-800-633-4227). Information about the ALJ hearing process can also be found at www.hhs.gov/omha or by calling 1-855-556-8475.

## Other Important Information

If you want copies of statutes, regulations, and/or policies we used to arrive at this decision, please write to us and attach a copy of this letter, at:

**C2C Innovative Solutions, Inc.**
A Medicare Contractor
P.O. Box 45301
Jacksonville FL 32232-5301

If you have questions, please call us at the phone number provided on the front of this notice.

## Other Resources To Help You

1-800-MEDICARE (1-800-633-4227),
TTY/TDD: 1-800-486-2048

# IMPORTANT INFORMATION ABOUT YOUR APPEAL RIGHTS