# Complaint Exhibit 3

Department of Health and Human Services
Office of the Secretary

**OFFICE OF MEDICARE HEARINGS AND APPEALS**

Irvine Field Office
19 Technology Drive
Suite 200
Irvine, CA 92618-2364
(949) 788-8000
(949) 788-8032 (Direct)
949-788-3660 (Fax)
(866) 495-7414 (Toll Free)

July 15, 2025

NICHOLSON & EASTIN LLP
ATTN: ERIN FERBER
1330 SE 4TH AVE STE J
FORT LAUDERDALE, FL 33316

**NOTICE OF DECISION**

Appellant: QUANTUM PRACTITIONER SERVICES LLC
OMHA Appeal Number: 3-14553059676

Enclosed is the decision for the above case. This decision is based on the administrative record, including any evidence or testimony presented at the hearing, if one was held. The decision is not precedential, does not release the appellant from civil or criminal liability, and may be reopened at any time if it was procured by fraud or similar fault. In addition, the decision may be reopened within 180 calendar days from the date of the decision for good cause. Good cause exists when there is new and material evidence that was not available or known at the time of the decision and may result in a different conclusion, or when the evidence that was considered clearly shows on its face that an obvious error was made at the time of the decision.

**What if I disagree with the decision?**

If you disagree with the decision, you may file an appeal with the Medicare Appeals Council. Other parties may also appeal the decision. In addition, the Medicare Appeals Council may decide to review the decision on its own motion. If no party appeals the decision and the Medicare Appeals Council does not review the decision, the decision is binding on all parties and you and the other parties will not have the right to ask a federal court to review the decision.

If you are not already represented, you may appoint an attorney or other person to represent you.

## How much time do I have to file an appeal?

The Medicare Appeals Council must receive your written appeal **within 60 calendar days** of the date that you receive this notice. The Medicare Appeals Council assumes you received this notice 5 calendar days after the date of the notice unless you show that you did not receive it within the 5-day period.

The Medicare Appeals Council will dismiss a late request for review unless you show that you had a good reason for not filing it on time.

## How do I file an appeal?

To appeal, you must ask the Medicare Appeals Council to review the decision. Your appeal must be in writing, except that a request for expedited review of a Part D decision may be made orally as described below. Your appeal must identify the parts of the decision that you disagree with, and explain why you disagree.

You may submit a written request for review to the Medicare Appeals Council using one of three available methods: mail, fax, or electronic filing (E-File). **Please do not submit your request for review using more than one method**. Regardless of how you file your appeal, **you must always send a copy of your written request for review to the other parties who received a copy of the decision.**

If you are filing a written request for review, you may use the enclosed *Request for Review* (Form DAB-101), or you may write a letter containing the following:

- The beneficiary's/enrollee's name (and telephone number for Part D appeals);
- The beneficiary's/enrollee's Medicare number (Health Insurance Claim Number or Medicare Beneficiary Identifier);
- The item(s), service(s), or specific Part D drug(s) in dispute;
- The specific date(s) the item(s) or service(s) were provided, if applicable;
- For Part D appeals, the plan name;
- For Part D appeals, the OMHA Appeal Number on the adjudicator's decision;
- For Part D appeals requesting expedited review, a statement that you are requesting expedited review;
- The date of the adjudicator's decision (not required for Part D appeals); and
- Your name and signature, and, if applicable, the name and signature of your representative.

**Filing by mail:**

Mail your appeal and a copy of the enclosed decision to:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

**Filing by fax:**

Fax your appeal and a copy of the enclosed decision to **(202) 565-0227.**

**Filing by computer:**

Using your web browser, visit the Medicare Operations Division Electronic Filing System (MOD E-File) website at **https://dab.efile.hhs.gov/mod**.

To file a new appeal using MOD E-File, you will need to register by:

1. Clicking **Register** on the MOD E-File home page;
2. Entering the information requested on the "Register New Account" form; and
3. Clicking **Register Account** at the bottom of the form.

You will use the email address and password you provided during registration to access MOD E-File at **https://dab.efile.hhs.gov/mod/users/new**. You will be able to use MOD E-File to file and access the specific materials for appeals to which you are a party or a party's representative. You may check the status of any appeal on the website homepage without registering.

Once registered, you may file your appeal by:

1. Logging into MOD E-File;
2. Clicking the **File New Appeal** menu button on the top right of the screen;
3. Selecting the type of appeal you are filing (Request for Review or Request for Escalation); and
4. Entering the requested Appeal Information and uploading the requested Appeal Documents on the "File New Appeal - Medicare Operations Division" form. You are required to provide information and documents marked with an asterisk.

At a minimum, the Medicare Appeals Council requires an appellant to file a signed Request for Review and a copy of the enclosed decision. All documents should be submitted in Portable Document Format (PDF) whenever possible. Any document, including a Request for Review, will be deemed to have been filed on a given day, if it is uploaded to MOD E-File on or before 11:59 p.m. EST of that day.

Currently, the documents that may be filed electronically are the:

1. Request for Review;
2. Appointment of Representative form (OMB Form 0938-0950);
3. Copy of Administrative Law Judge or attorney adjudicator decision;
4. Memorandum or brief or other written statement in support of your appeal; and
5. Request to Withdraw your appeal

**No other documents aside from the five (5) listed categories above may be submitted through MOD E-File.**

**Filing by oral request (for expedited review only):**

Oral requests for expedited review of a Part D decision may be made by telephone to **(866) 365-8204.** You must provide the information listed in the bullet points above and a statement that you are requesting an expedited review within 60 calendar days after receipt of this notice of decision. The Medicare Appeals Council will document the oral request in writing and maintain the documentation in the case file.

Please note that your request for review will only be expedited (1) the appeal involves an issue specified in 42 C.F.R. § 423.566(b), but does not include solely a request for payment of a Part D drug that has already been furnished, and (2) the prescribing physician (or other prescriber) indicates, or the Medicare Appeals Council determines, that the standard time frame may seriously jeopardize your life, health, or ability to regain maximum function.

**How will the Medicare Appeals Council respond to my appeal?**

The Medicare Appeals Council will limit its review to the issues raised in the appeal, unless the appeal is filed by an unrepresented beneficiary/enrollee. It may change the parts of the decision that you agree with. It may adopt, modify, or reverse the decision, in whole or in part, or it may send the case back to OMHA for further action. It may also dismiss your appeal.

**Questions?**

You may call or write our office. A toll-free phone number and mailing address are at the top of this notice.

Additional information about filing an appeal with the Medicare Appeals Council is available at http://www.hhs.gov/dab/. You can also call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100 or (866) 365-8204 (toll free), if you have questions about filing an appeal.

cc:

C2C Innovative Solutions, Inc.
Part B South C2C
301 W Bay Street, Ste. 1110
Jacksonville, FL 32231-4006

First Coast Service Options
JN Appeals
2020 Technology Parkway, Suite 100
Mechanicsburg, PA 17050

[IF MULTIPLE BENEFICIARY APPEAL ONLY INPUT: To protect beneficiary privacy, names and addresses of other individuals have been removed from your copy of this notice.]

Enclosures:
OMHA-152, Decision
DAB-101, Request for Review
OMHA-156, Exhibit List
Attachment A

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Irvine, CA**

| | | | |
|---|---|---|---|
| Appeal of: | **QUANTUM PRACTITIONER SERVICES LLC** | OMHA Appeal No.: | **3-14553059676** |
| Beneficiary: | **Multiple (See Attachment A)** | Medicare Part: | **B** |
| Medicare No.: | **Multiple (See Attachment A)** | Before: | **Sean McKee**<br>Administrative Law Judge |

## DECISION

After considering all the evidence and arguments presented in the record and at the hearing, I enter an **UNFAVORABLE** decision against Quantum Practitioner Services, LLC. (Appellant). The evaluation and management, amniotic fluid allograft, and associated wound care services provided by the Appellant to the Beneficiaries on multiple dates of service are not covered by Medicare. The Appellant is financially liable for the overpayments. (*See* Attachment A).

## PROCEDURAL HISTORY

The Appellant submitted claims to Medicare after furnishing the evaluation and management, amniotic fluid allograft, and associated wound care services to the Beneficiaries on multiple dates of service. The Medicare Administrative Contractor (MAC), First Coast Service Options, Inc., initially permitted the payment of the Appellant's Medicare claims. A post payment review was conducted by SafeGuard Services, the Unified Program Integrity Contractor (UPIC), and it was determined that overpayments had occurred. The Appellant appealed and the MAC issued an unfavorable redetermination decision. (File 4, pp. 826-1142.) Thereafter, C2C Innovative Solutions, Inc., a Qualified Independent Contractor (QIC), issued unfavorable reconsideration decisions. (File 8, pp. 1-44.)

The Appellant filed a valid request for Administrative Law Judge (ALJ) hearing with the Office of Medicare Hearings and Appeals (OMHA). Pursuant to due notice, a hearing was held on July 2, 2025. The Appellant's representative, Erin Ferber, Counsel, and Appellant's witnesses, Dr. Adrianne Ross, DPM, and Alexander Stephens, APRN, made an appearance at the ALJ hearing, and provided testimony/argument.

At the start of the ALJ hearing, Ms. Ferber noted that the record contains information for a Beneficiary not involved in this appeal. Thus, the information was not considered in this decision. (File 4, pp. 1148-1159.)

Regarding the exhibits attached to the Appellant's pre-hearing brief, Exhibit A is Dr. Adrianne Ross' curriculum vitae. Dr. Ross' curriculum vitae was previously submitted by the Appellant to

the QIC. Additionally, Dr. Ross' CV is not evidence. Consequently, Dr. Ross' CV was considered in issuing this decision. Exhibit 1 is Dr. Ross' Expert Report, which was previously submitted by the Appellant to the QIC[1]. Thus, Dr. Ross' Expert Report is not new evidence, and it was considered in issuing this decision. Exhibit B includes a Bibliography for Skin Substitutes, which contains the titles of articles. The Bibliography for Skin Substitutes was previously submitted by the Appellant to the QIC. Consequently, the Bibliography for Skin Substitutes was considered[2] in issuing this decision. However, Exhibit B also includes the full articles referenced by the Bibliography for Skin Substitutes. The full articles were offered into evidence by the Appellant for the first time in the Appellant's June 25, 2025, pre-hearing brief.

Section 1869(b)(3) of the Social Security Act states that a provider or supplier may not introduce evidence in any appeal if that evidence was not presented at the reconsideration conducted by the QIC, unless there is good cause that precluded the introduction of such evidence at or before the reconsideration. Implementing regulations at Title 42 C.F.R. Section 405.1018(c) mirror this prohibition and extend it to Medicare beneficiaries who are represented by a provider or supplier. (*See also,* 42 C.F.R. §§ 405.956(b)(8), 405.976(b)(5)(ii).)

New evidence must be accompanied by a statement explaining why the evidence was not previously submitted to the QIC or a prior decision-maker, or the evidence will not be considered. (42 C.F.R. § 405.1018(c)(2).) Examples of situations where an adjudicator may find good cause for the introduction of new evidence that was not submitted prior to the QIC's reconsideration are provided in Section 405.1028(a)(2). If the adjudicator determines that good cause does not exist for the introduction of the new evidence, the adjudicator "must exclude the evidence from the proceeding and may not consider it in reaching a decision." (*Id.* at § 405.1028(a)(3).) (emphasis added)

In this case, the Appellant asserts that the new evidence submitted with its request for hearing is responsive to an issue raised for the first time in the QIC's reconsideration, which is a circumstance in which good cause may be found for the introduction of new evidence for the first time at the OMHA level of appeal. (*See* 42 C.F.R. § 405.1028(a)(2)(i).) However, the Appellant's assertion is incorrect. The MAC's redetermination decisions cited as a basis for the denials the fact that the amniotic tissue allograft at issue is deemed investigational and has not been proven to be effective. The Appellant's submission included peer-reviewed journal articles and other medical literature are directly responsive to this issue and, therefore, should have been made to the QIC prior to the QIC issuing its reconsideration in this matter. Because it was not, and because the Appellant has not established good cause for the introduction of the new evidence for the first time at the OMHA level, the evidence must be excluded from consideration. It is immaterial that some or all the literature may be publicly available on the internet, as: (1) it was not presented to the CMS contractors for consideration in issuing the prior determinations in this matter; and (2) decisions are made based on the information in the administrative record. For all these reasons, I did not consider the full articles included in Exhibit B in issuing this decision.

---

[1] Exhibit 8 of the Appellant's request for reconsideration.

[2] At the ALJ Hearing, the Appellant was notified in error that the Bibliography for Skin Substitutes would not be considered in issuing this decision.

**ISSUES**

Whether the evaluation and management, amniotic fluid allograft, and associated wound care services provided by the Appellant to the Beneficiaries on multiple dates of service satisfy Medicare's coverage and payment criteria.

Whether section 1879 and 1870 of the Social Security Act apply to any non-covered items/services.

**APPLICABLE LAW AND POLICY**

The Medicare Part B program entitles a beneficiary to have payment made to him or her, or on his or her behalf, for medical and other health services. (Social Security Act (Act) § 1832(a)(1); *see also* 42 C.F.R. § 410.3(a)(1)).

Section 1862(a)(1) of the Act limits Medicare payments to items or services that are "reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member," notwithstanding any other provision of Title XVIII of the Act. (*See also*, 42 C.F.R. § 411.15(k)(1); *Medicare Benefit Policy Manual* (*MBPM*) (*Internet-Only Manual Pub. 100-02*) Ch. 16, § 20).

Section 1833(e) of the Act provides that claims for payment must be supported by sufficient information and documentation. The provider, supplier, or beneficiary, as appropriate, must furnish to the intermediary or carrier sufficient information to determine whether payment is due and the amount of payment. (*See also*, 42 C.F.R. § 424.5(a)(6)).

The Medicare Program Integrity Manual[3] (MPIM) Chapter 3 provides pertinent guidance on the claim review process:

> 3.3.3 - Reviewing Claims in the Absence of Policies and Guidelines
> (Rev. 10365; Issued: 10-02-20; Effective: 08-27-20; Implementation: 08-27-20)
>
> The MACs, CERT, Recovery Auditors, and UPICs have the discretion to review claims, in the absence of polices, whether a NCD, coverage provision in an interpretive Medicare manual, or LCD exists for that service. When making individual claim determinations, they shall determine that the service in question is covered based on whether the service meets all of the conditions listed in section 3.6.2.1.
>
> 3.6.2.1 - Coverage Determinations
> (Rev. 10365; Issued: 10-02-20; Effective: 08-27-20; Implementation: 08-27-20)
>
> The MACs, CERT, Recovery Auditors, and UPICs shall deny an item or service if it does not meet any of the conditions listed below:
>
> • The item or service does not fall into a Medicare benefit category.
> • The item or service is statutorily excluded on grounds other than §1862(a) (1)

[3]Although not binding on the ALJ, the respective manuals issued by the Centers for Medicare and Medicaid Services (CMS) provide guidance in the administration of the Medicare program. In *Shalala v. Guernsey Memorial Hospital*, 514 U.S. 87, 102 (1995), the United States Supreme Court concluded that an agency manual section is a valid interpretive rule and that it is reasonable for the agency to follow it.

(A) of the Act.
• The item or service is not reasonable and necessary under §1862(a) (1) (A) of the Act.
• The item or service does not meet other Medicare program requirements for payment.

3.6.2.2 - Reasonable and Necessary Criteria
(Rev. 10365; Issued: 10-02-20; Effective: 08-27-20; Implementation: 08-27-20)

This section applies to MACs, CERT, Recovery Auditors, and UPICs, as indicated. CMS issues national coverage determinations (NCDs) that specify whether certain items, services, procedures or technologies are reasonable and necessary under §1862(a) (1) (A) of the Act. In the absence of an NCD, Medicare contractors are responsible for determining whether services are reasonable and necessary. If no local coverage determination (LCD) exists for a particular item or service, the MACs, CERT, Recovery Auditors, and UPICs shall consider an item or service to be reasonable and necessary if the item or service meets the following criteria:

• It is safe and effective;
• It is not experimental or investigational; and
• It is appropriate, including the duration and frequency in terms of whether the service or item is:

  o Furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member;
  o Furnished in a setting appropriate to the beneficiary's medical needs and condition;
  o Ordered and furnished by qualified personnel; and,
  o One that meets, but does not exceed, the beneficiary's medical need.

There are several exceptions to the requirement that a service be reasonable and necessary for diagnosis or treatment of illness or injury in order to be considered for payment. The exceptions appear in the full text of §1862(a) (l) (A) of the Act. See also PIM chapters 13, §5.1 and 7.1.

The MPIM, Chapter 13 also provides guidance on the Local Coverage Determination process. It provides in pertinent parts:

13.2.3 - Clinical Guidelines, Consensus Documents and Consultation
(Rev. 863; Issued: 02-12-19; Effective: 10-03-18; Implementation: 01-08-19)

Prior to drafting and during the development of an LCD, if available the MACs shall supplement their research (see section 13.5.3) with clinical guidelines, consensus documents or consultation by experts (recognized authorities in the field), medical associations or other health care professionals for an advisory opinion, when applicable. When a MAC consults with an expert, they shall inform and obtain consent from the expert that their opinion may be used, disclosed publicly, and clearly identified as such within the proposed or final LCD. Acceptance by individual health care providers, or even a limited group of health

care providers, does not indicate general acceptance of the item or service by the medical community.

13.5.3 - Evidentiary Content
(Rev. 863; Issued: 02-12-19; Effective: 10-03-18; Implementation: 01-08-19)

In conducting a review, MACs shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements and clinical guidelines. Proprietary information, submitted by a requestor, not available to the public shall not be considered. Medicare data considered as part of the evidence review for an LCD shall be reported in the evidence summary. The reported data shall comply with Medicare Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule data disclosure requirements by using aggregate level information, such as aggregated statistics on Medicare beneficiary or provider utilization. The review shall include a summary of all the evidence used to support the determination, which may be grouped by type of evidence evaluated.

*Liability Provisions*

Section 1879 of the Act provides that if a payment for an item or service is denied as not medically reasonable and necessary under Section 1862(a)(1), payment may be made notwithstanding the Section 1862 provision if neither the provider nor the beneficiary knew or reasonably could have been expected to know that payment would not be made under Medicare. The implementing regulations establish the criteria for determining such knowledge. A beneficiary is presumed to have knowledge when he or she receives written notice of non-coverage from the QIO, intermediary, carrier, provider, practitioner, or supplier. (42 C.F.R. § 411.404). A provider or supplier is presumed to have knowledge based on experience, actual knowledge, or constructive notice via receipt of CMS notices, including manuals, bulletins, or other written guides or directives from intermediaries, carriers, or QICs. (42 C.F.R. § 411.406).

Section 1870 of the Act states that a provider is liable for overpayments it received unless it is found to be without fault. If a provider was without fault with respect to an overpayment it received (or is deemed without fault, in the absence of evidence to the contrary, because the overpayment was discovered subsequent to the fifth calendar year after the year of payment), it is not liable for the overpayment; therefore, it is not responsible for refunding the amount involved.

## FINDINGS OF FACT AND ANALYSIS

Beneficiary 1 is diagnosed with type 2 diabetes mellitus with other specified complication, essential primary hypertension, hyperlipidemia, unspecified, a history of coronary artery disease, malignant neoplasm of anus, and malignant neoplasm of upper lobe, left bronchus or lung. Progress notes state that the Beneficiary presents with left foot anterior wound, and left ankle wound. (File 4, pp. 441-460.)

Beneficiary 2 is diagnosed with type 2 diabetes mellitus with other skin ulcer, non-pressure chronic ulcer located on the other part of the right lower leg with the fat layer exposed, chronic venous insufficiency, lymphedema, hemiplegia following cerebral infraction affecting left side, atherosclerotic heart disease of native coronary artery, depression, anxiety, inflamed seborrheic keratosis, and actinic keratosis, and long term use of insulin. Nursing notes report that the

Beneficiary presented with open wounds to her right lower extremity anterior, left anterior lower leg, left supination foot, and left distal lateral, posterior inferior lower leg. (File 4, pp. 89-131.)

Beneficiary 3 is diagnosed with type 2 diabetes with foot ulcer, essential primary hypertension, atherosclerosis of naïve arteries of other extremities with ulceration, hyperlipidemia, and severe peripheral vascular disease. Encounter notes state that the Beneficiary presented with wounds on the left foot x2 and wounds on the right foot x3. (File 4, pp. 1311-1315.)

When denying the Appellants claims, the MAC found that the submitted records did not show that the services rendered were reasonable and necessary. The MAC maintained that the amniotic product used as a skin substitute graft for wound treatment is a non-homologous use, is considered investigational and not approved by the FDA since it lacks evidence of being safe and effective. (File 4.)

The QIC held that the items/services at issue were not reasonable and necessary and denied the Appellant's Medicare claims. The QIC explained that the documentation does not support the services provided, e.g, the documentation does include descriptions of the failed prior treatments, notation of tissue removed, or the method used to debride the wounds, the characteristics of the wounds etc. The QIC asserts that the skin substitute and related services at issue are considered investigational due to lack of clinical evidence and insufficient peer reviewed literature available to meet the requirements of medical necessity. The QIC further held that the documentation did not support significant separately identifiable E/M services from the amniotic allograft service (coded as 99348 and 99349) were provided on the same day. (File 4, p. 5.)

In a position statement filed with the Request for Hearing, the Appellant contends that the services provided were medically necessary and appropriately rendered and documented. The Appellant explains that the allografts were used consistent with manufacture/FDA instruction. The Appellant contends that there is overwhelming evidence to support the clinical efficacy of the use of skin substitutes for the treatment of wounds. The Appellant states that the Impax Membrane was primarily used as a barrier or protective covering for the wounds which is a homologous use and therefore safe and effective. (File 5, p. 4; File 21, pp. 2-9.)

The Appellant's representative, Ms. Ferber, set forth the procedural history of the appeal and background information regarding the Appellant, and the Appellant's witnesses, Dr. Adrianne Ross, DPM, and Alexander Stephens, APRN. Ms. Ferber explained that there is no applicable NCD or LCD and thus, MPIM, Chapter 3, Section 3.6.2.2 governs whether the services at issue are covered by Medicare. Ms. Ferber argued that the amniotic fluid allograft and associated wound care services at issue were medically reasonable and necessary and not experimental or investigational. Ms. Ferber went on to assert that the decisions issued by the CMS contractors are erroneous. Ms. Ferber argued that the amniotic fluid allograft and associated wound care services provided by the Appellant to the Beneficiaries constitutes homologous use under section 361 of the Public Health Service Act (PHSA) and 21 C.F.R. Part 1271. Ms. Ferber asserted that the Beneficiaries' medical records properly document their wounds, past treatment, and Appellant's treatment of their wounds using the amniotic fluid allografts. (Hearing Recording (July 2, (2025).)

The Appellant's witness, Dr. Ross, provided her educational and work history. Dr. Ross explained that she prepared a report after reviewing the administrative record in this case. Dr. Ross asserted that HCT/P products regulated under Section 361 of the PHSA are very popular in treating chronic wounds. Dr. Ross testified that skin substitutes have reduced hospital admissions and amputations. Dr. Ross explained how a product is designated as an HCT/P and how a

product under Section 361 of the PHSA does not require FDA approval. Dr. Ross stated that products designated under Section 361 of the PHSA do not require peer review, clinical trials, studies, etc. Dr. Ross testified how amniotic tissue allografts are used in the treatment of chronic wounds. Dr. Ross stated that amniotic tissue allografts are intended to be a protective barrier. Dr. Ross clarified that it is not a liquid product. Dr. Ross opined that it is consistent with a homologous use definition. Dr. Ross asserted that there are numerous published peer-reviewed literature addressing how amniotic tissue allografts are used in the treatment of chronic wounds. Dr. Ross testified that there are many different brand names for amniotic tissue allograft products and clarified that the peer-reviewed research applies equally to all of them. Dr. Ross alleged that the Appellant's product is an HCT/P Section 361 product. Dr. Ross opined that the amniotic fluid allograft and associated wound care services provided to the Beneficiaries were medically reasonable and necessary. Dr. Ross maintained that the Appellant followed the manufacturer's instructions on how to use the product. (Hearing Recording (July 2, (2025).)

*Regarding Beneficiary 1*

The Appellant's witness, Mr. Stephens, alleged that the Beneficiary was discharged from the hospital on May 20, 2023, with an order for home health services for wound care. According to Mr. Stephens, on May 25, 2023, the Appellant first evaluated the Beneficiary. Mr. Stephens alleged that the Beneficiary had wounds dating back several years. Mr. Stephens said that the Beneficiary had numerous medical comorbidities that impacted the healing of his wounds. Mr. Stephens maintained that prior to the Appellant providing the Beneficiary with skin allografts, the Beneficiary had undergone conservative treatments on his wounds, e.g., dressings, wound vacs, etc. According to Mr. Stephens, the conservative wound treatments provided to the Beneficiary failed to improve his wounds. Mr. Stephens explained that the Beneficiary was not a candidate for more aggressive wound treatment interventions. Mr. Stephens cited to the Beneficiary's medical record and noted that the Appellant recorded the size, shape, and characteristics of the Beneficiary's wounds as it treated him with skin allografts over the course of several dates of service. Mr. Stephens said that on June 17, 2023, the Beneficiary was admitted to the hospital and that the hospital began treating the Beneficiary's wounds. Mr. Stephens maintained that after the Beneficiary was discharged from the hospital, he was seen by the Appellant again on June 28, 2023. Mr. Stephens noted that the size, shape, and characteristics of the Beneficiary's wounds were recorded and treated again with skin allografts. Mr. Stephens asserted that the application of the skin allografts improved the Beneficiary's wounds, and he was able to live a more independent lifestyle. (Hearing Recording (July 2, 2025).)

*Regarding Beneficiary 2*

The Appellant's witness, Mr. Stephens, said that on April 19, 2023, the Beneficiary was evaluated for home health care. Mr. Stephens asserted that the Beneficiary had at least four wounds, which had been present for years. Mr. Stephens maintained that the size, shape, and characteristics of the Beneficiary's wounds were recorded. According to Mr. Stephens, on June 20, 2023, the Appellant evaluated the Beneficiary's wounds. Mr. Stephens noted that the Beneficiary had numerous medical comorbidities. Mr. Stephens said that the Beneficiary's wounds had previously been unsuccessfully treated with conservative wound treatments, which made her a candidate for skin allograft treatments. Mr. Stephens noted that the Appellant documented the size, shape, and characteristics of the Beneficiary's wounds. Mr. Stephens explained that the Appellant treated the Beneficiary's wounds with skin allografts over the course of several dates of service. Mr. Stephens asserted that by August 30, 2023—the last date of service—the Beneficiary's wounds had healed significantly. (Hearing Recording (July 2, 2025).)

<u>*Regarding Beneficiary 2*</u>

The Appellant's witness, Mr. Stephens, said that on May 3, 2023, the Beneficiary presented to a regional medical center for a surgery consultation. Mr. Stephens asserted that the Beneficiary had numerous wounds, and all conservative treatments had failed to heal his wounds. Mr. Stephens maintained that the Beneficiary had numerous medical comorbidities, including toe amputations. Mr. Stephens stated that on July 6, 2023, the Appellant evaluated the Beneficiary's wounds. Mr. Stephens noted that the Appellant recorded the size, shape, and characteristics of the Beneficiary's wounds. According to Mr. Stephens, the Beneficiary was at risk for infections and amputations and thus, he was not a candidate for aggressive wound treatment. Mr. Stephens said that on July 6, 2023, the Appellant began treating the Beneficiary's wounds with skin allografts. Mr. Stephens asserted that the Appellant treated the Beneficiary's wounds over several dates of service and that measurements were taken of the wounds each time. Mr. Stephens opined that the Beneficiary responded positively to the skin allografts. (Hearing Recording (July 2, 2025).)

*Analysis*

*Amniotic Fluid Allograft, and Associated Wound Care Services*

Having considered the Appellant's argument and the evidence in the administrative record, I find that the amniotic fluid allografts and associated wound care services at issue were not reasonable and necessary. The amniotic tissue allograft's status as a section 361 HCT/P is not dispositive for purposes of Medicare coverage.

As a preliminary matter, the Appellant argues that the skin substitute product at issue has been classified by the FDA's TRG as an HCT/P that is regulated solely under title 21 C.F.R. part 1271. HCT/Ps that meet all of the criteria in title 21 C.F.R. section 1271.10(a), sometimes referred to as "361 HCT/Ps," are exempt from the requirements of section 351 of the Public Health Services (PHS) Act relating to the regulation of drugs, devices, and/or biological products and are instead subject to regulation only under section 361 of the PHS Act. Therefore, 361 HCT/Ps are exempt from premarket review and authorization by the FDA. (*See*, https://www.fda.gov/media/70689/download (last visited April 1, 2025).)

However, an item's status as a 361 HCT/P is not dispositive of Medicare coverage. Section 361 of the PHS Act pertains to the promulgation of regulations to control communicable diseases. (*See also*, 21 C.F.R. § 1271.1(a) (stating that the purpose of 21 C.F.R. part 1271, subpart A "is to create an electronic registration and listing system for establishments that manufacture [HCT/Ps] and to establish donor-eligibility, current good tissue practice, and other procedures to prevent the introduction, transmission, and spread of communicable diseases by HCT/Ps.").) This purpose, while important, is distinct from the purpose of the statutes and regulations that define the scope of covered benefits under the Medicare insurance program. Paramount among these statutes and regulations is the general requirement that, in order for an item or service to be covered by Medicare, it must be reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. (Act § 1862(a)(1)(A); *see also* 42 C.F.R. § 411.15(k).)

The Act vests in the Secretary of Health and Human Services (HHS) the authority to make coverage decisions. Under that authority, CMS issues NCDs that state whether specific medical items, services, treatment procedures, or technologies may be paid for by Medicare. In the

absence of a specific NCD, Medicare contractors are responsible for determining whether an item or service is reasonable and necessary, such as through the process of developing an LCD. (*See* preface to Coverage Issues Manual (reprinted at 54 Fed. Reg. 34555 (Aug. 21, 1989).) As such, coverage of a particular item or service may vary among contractors. (52 Fed. Reg. 15560, 15561 (Apr. 29, 1987).)

Medicare contractors will consider an item or service to be reasonable and necessary if the contractor determines that the item or service is: safe and effective; not experimental or investigational (except for certain clinical trials); appropriate, including the duration and frequency that is considered appropriate for the item or service, in terms of whether it is: furnished in accordance with accepted standards of medical practice for the diagnosis or treatment of the beneficiary's condition or to improve the function of a malformed body member, furnished in a setting appropriate to the beneficiary's medical needs and condition, ordered and furnished by qualified personnel, one that meets, but does not exceed, the beneficiary's medical need; and at least as beneficial as an existing and available medically appropriate alternative. (*MPIM*, ch. 3, § 3.6.2.2.) Under section 1833(e) of the Act, Medicare Part B will not cover an item or service unless the provider or supplier furnishes sufficient documentation to determine whether and how much payment is due. (*See also*, 42 C.F.R. § 424.5(a)(6).)

CMS has issued additional guidance to MACs, in developing proposed and final LCDs, for reviewing evidence supporting coverage of an item or service. That guidance states, in part, that in conducting such reviews, MACs shall use the available evidence of general acceptance by the medical community, such as published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines; proprietary information, submitted by a requestor, not available to the public shall not be considered. (*MPIM*, ch. 13, § 13.5.3).

CMS has on many occasions and in various contexts,[4] stated that, in determining whether an item or service is reasonable and necessary for purposes of Medicare coverage, CMS or its contractors make independent inquiry into whether the item or service is safe and effective and not experimental or investigational. Courts have considered this issue and arrived at similar conclusions.[5] While FDA approval is a factor to be considered, it is not dispositive and does not preclude CMS or its contractors from inquiring whether the item or service is supported by

---

[4] *See*, e.g., 42 C.F.R. § 405.201(a)(1) (stating that CMS uses the FDA categorization of a medical device "as a factor in making Medicare coverage determinations") and (a)(2) (stating that "CMS may consider for Medicare coverage" FDA-approved devices "that have been categorized as non-experimental/investigational"); *see also*, e.g., MPIM, ch. 13, § 13.5.3 (stating that, in the development of local coverage determinations (LCDs) regarding Medicare coverage of an item or service, "if the item or service is regulated by the FDA, and determined by the MAC to be reasonable and necessary, information regarding the use of the item or service subject to the FDA indication, as applicable shall be included [in the LCD]"); *see also*, e.g., 68 Fed. Reg. 55634 (Sept. 26, 2003) (stating, regarding FDA approval and Medicare coverage of medical devices, "Whereas the FDA must determine that a product is safe and effective as a condition of approval, CMS must determine that the product is reasonable and necessary as a condition of coverage under section 1862(a)(1)(A) of the Act," and "Although an FDA-regulated product must receive FDA approval or clearance . . . for at least one indication to be eligible for coverage . . ., FDA approval/clearance alone does not generally entitle that device to coverage."); *see also*, e.g., 89 Fed. Reg. 65724, 65725–26 (Aug. 12, 2024) (explaining that FDA determines are often based on limited evidence regarding individuals representative of the Medicare population, who often have multiple comorbidities and are often underrepresented or not represented in many clinical studies).

[5] *See*, e.g., *Almy v. Sebelius*, 679 F. 3d 297 (4th Cir. 2012) (stating, "The Medicare statute clearly vests the Secretary with the authority to interpret when a device is 'reasonable and necessary,' and therefore eligible for coverage under Part B. The statute contemplates no role for the FDA, which is charged with applying the standards of the Federal Food, Drug, and Cosmetic Act, not the Medicare statute.").

published authoritative evidence derived from definitive randomized clinical trials or other studies. Furthermore, while the FDA evaluates safety and effectiveness, its reviews are often based on limited evidence regarding Medicare patients.

Medicare considers items to be reasonable and necessary when they are safe and effective, not experimental or investigational (unless covered as part of a qualifying clinical trial), and appropriate, which requires, among other things, that the item or service: be furnished in accordance with accepted standards of medical practice; meet, but not exceed, the patient's medical need; and be at least as beneficial as an existing and available medically appropriate alternative. (*MPIM*, ch. 3, § 3.6.2.2). Evidence of general acceptance by the medical community include published original research in peer-reviewed medical journals, systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines. (*Id.* at § 13.5.3).

As explained *supra*, the medical literature submitted by the Appellant for the first time at the OMHA level of appeal was excluded from consideration because I did not find good cause to consider the new evidence. At no time prior to the Appellant's June 25, 2025, pre-hearing brief, did the Appellant submit any medical literature. Thus, the record upon which my decision must be based contains no peer-reviewed medical literature to support that the amniotic fluid allograft, and associated wound care services at issue is reasonable and necessary and not experimental and investigational—nor does it contain any other evidence to support such a finding, such as systematic reviews and meta-analyses, evidence-based consensus statements, and clinical guidelines to show that use of the amniotic tissue allograft at issue represents standard medical practice for the treatment of chronic wounds or is at least as effective as existing alternatives. Accordingly, I find that the record is insufficient to establish that the amniotic fluid allograft and associated wound care services at issue were reasonable and necessary and not experimental and investigational. The related services (15271, 15272, 15273, 15275, 12576, 15277, and 15277) are not separately payable as they are dependent on the primary services.

Because I have determined that the amniotic tissue allograft at issue is not reasonable and necessary because it is experimental and investigational, I need not consider whether it was reasonable and necessary for the particular Beneficiaries involved in this appeal. Nevertheless, I note that the record contains limited information about the Beneficiaries' wounds, prior treatments employed, and why those prior treatments failed.

*Evaluation and Management Services*

Medicare allows payment for an E/M service provided on the day of a procedure if the service is for a significant, separately identifiable E/M service that is above and beyond the usual pre-operative and post-operative work of the procedure. Medicare Claims Processing Manual (MCPM), CMS Pub. 100-04, Ch. 12, § 30.6.6.B. Both the medically necessary E/M service and the procedure must be appropriately and sufficiently documented by the physician or qualified nonphysician practitioner in the patient's medical record to support the claim for these services. *Id.*

In this case, the documentation does not reflect that there was a significant, separately identifiable E/M service provided to the beneficiaries, beyond the usual pre-operative and post-operative care performed on the same date of service. The medical documentation in the record does not demonstrate that the E/M services at issue were significant and separately identifiable from the procedure provided to the beneficiaries on the same day. Therefore, separate payment cannot be allowed for the E/M services at issue in accordance with Medicare guidelines.

*Limitation on Liability*

Under § 1879(a) of the Act, a supplier or beneficiary may be relieved from liability if they did not know, and could not reasonably be expected to know, that Medicare would not cover the items. The administrative record did not include an Advance Beneficiary Notices (ABNs) or any other form of notice to show that the Beneficiaries knew, or reasonably could have been expected to know, that Medicare would not pay for the items/services. Therefore, the Beneficiaries liability is limited pursuant to section 1879 of the Act.

In contrast, the Appellant, as a Medicare supplier, is deemed to have constructive notice of the requirements for Medicare coverage, including those found in the regulations and Medicare program guidance. As discussed above, the Appellant should have known that the coverage requirements are not satisfied, and that Medicare would not cover the membrane wrap tissue allograft and related application service as reasonable and necessary pursuant to the MPIM. (*See MPIM*, Ch. 3, § 3.6.2.2; *MPIM*, Ch. 13, § 13.5.3).

*Waiver of Liability*

Pursuant to Section 1870 of the Act, a provider's liability for an overpayment of Medicare benefits may be waived if the provider was not at fault in creating the overpayment. As stated above, a Medicare provider is expected to know the rules and procedures of Medicare and cannot be found to be without fault in creating the overpayment. The Appellant is not without fault because the Appellant billed and received payment for the items/services for which the Appellant should have known it was not entitled. Therefore, overpayment recovery cannot be waived under Section 1870 of the Act. (*See, Medicare Financial Management Manual*, (*Internet-Only Manual Pub. 100-06*) Ch. 3, § 90 (Rev. 275, Effective Feb. 21, 2017).) The Appellant is liable for the overpayment amounts.

## CONCLUSIONS OF LAW

The evaluation and management, amniotic fluid allograft, and associated wound care services provided by the Appellant to the Beneficiaries on multiple dates of service are not covered by Medicare.

Section 1879 of the Act applies to limit liability for the Beneficiaries', but not the Appellant. The Appellant is liable for the non-covered costs. In addition, the Appellant is financially liable for the overpayments.

## ORDER

For the reasons discussed above, this decision is UNFAVORABLE. The Appellant is financially liable for the overpayment costs. I direct the Medicare Administrative Contractor to process the claim in accordance with this decision.

**SO ORDERED**

Sean McKee
Administrative Law Judge

# Attachment A

| Beneficiary | # | Date of Service | Procedure Code | Modifier | Decision |
|---|---|---|---|---|---|
| R.M. | 1 | 05/25/2023 | Q4262 | XU | Unfavorable |
| | 1 | 05/25/2023 | Q4262 | 76 | Unfavorable |
| | 1 | 05/25/2023 | Q4262 | | Unfavorable |
| | 1 | 05/25/2023 | 15277 | | Unfavorable |
| | 1 | 06/01/2023 | Q4262 | | Unfavorable |
| | 1 | 06/01/2023 | 15277 | | Unfavorable |
| | 1 | 06/01/2023 | Q4262 | 76 | Unfavorable |
| | 1 | 06/01/2023 | Q4262 | XU | Unfavorable |
| | 1 | 06/01/203 | Q4262 | XU | Unfavorable |
| | 1 | 05/25/2023 | Q4262 | XU | Unfavorable |
| | 1 | 06/08/2023 | Q4262 | 5976 | Unfavorable |
| | 1 | 06/08/2023 | Q4262 | 59 | Unfavorable |
| | 1 | 06/08/2023 | 15277 | | Unfavorable |
| | 1 | 06/08/2023 | Q4262 | 76 | Unfavorable |
| | 1 | 06/28/2023 | Q4262 | | Unfavorable |
| | 1 | 06/28/2023 | 15278 | | Unfavorable |
| | 1 | 06/28/2023 | Q4262 | 76 | Unfavorable |
| | 1 | 06/08/2023 | 15278 | | Unfavorable |
| D.O. | 2 | 06/15/2023 | Q4262 | 76 | Unfavorable |
| | 2 | 06/15/2023 | Q4262 | XU | Unfavorable |
| | 2 | 06/15/2023 | Q4262 | | Unfavorable |
| | 2 | 06/15/2023 | 15273 | | Unfavorable |
| | 2 | 07/06/2023 | Q4262 | JZ | Unfavorable |
| | 2 | 07/06/2023 | 15273 | | Unfavorable |
| | 2 | 06/21/2023 | 15274 | | Unfavorable |
| | 2 | 06/21/2023 | Q4262 | | Unfavorable |
| | 2 | 06/21/2023 | 15273 | | Unfavorable |
| | 2 | 06/21/2023 | Q4262 | 76 | Unfavorable |
| | 2 | 06/28/2023 | 15274 | | Unfavorable |
| | 2 | 06/28/2023 | Q4262 | | Unfavorable |
| | 2 | 06/28/2023 | 15273 | | Unfavorable |
| | 2 | 06/28/2023 | Q4262 | 76 | Unfavorable |
| | 2 | 06/28/2023 | Q4262 | XU | Unfavorable |
| | 2 | 06/08/2023 | Q4262 | XU | Unfavorable |
| | 2 | 06/08/2023 | Q4262 | 76 | Unfavorable |
| | 2 | 06/08/2023 | Q4262 | 7659 | Unfavorable |
| | 2 | 07/13/2023 | Q4262 | JZ | Unfavorable |
| | 2 | 07/13/2023 | 15273 | | Unfavorable |
| | 2 | 07/13/2023 | Q4262 | JZXU | Unfavorable |
| | 2 | 08/30/2023 | 15272 | | Unfavorable |
| | 2 | 08/30/2023 | Q4262 | JZ | Unfavorable |
| | 2 | 08/30/2023 | 15271 | | Unfavorable |
| | 2 | 07/26/2023 | Q4262 | JZ | Unfavorable |
| | 2 | 07/26/2023 | 15273 | | Unfavorable |

| | | | | | |
|---|---|---|---|---|---|
| | 2 | 07/26/2023 | Q4262 | JZXU | Unfavorable |
| | 2 | 08/09/2023 | 99349 | 25 | Unfavorable |
| | 2 | 08/09/2023 | 15272 | | Unfavorable |
| | 2 | 08/09/2023 | Q4262 | JZ | Unfavorable |
| | 2 | 08/09/2023 | 15271 | | Unfavorable |
| | 2 | 08/16/2023 | 15272 | | Unfavorable |
| | 2 | 08/16/2023 | Q4262 | JZ | Unfavorable |
| | 2 | 08/16/2023 | 15271 | | Unfavorable |
| J.S. | 3 | 07/06/2023 | 15275 | | Unfavorable |
| | 3 | 07/28/2023 | 15276 | | Unfavorable |
| | 3 | 07/28/2023 | Q4262 | JZ | Unfavorable |
| | 3 | 07/28/2023 | 15275 | | Unfavorable |
| | 3 | 08/24/2023 | Q4262 | JZXU | Unfavorable |
| | 3 | 08/24/2023 | 99348 | 25 | Unfavorable |
| | 3 | 08/24/2023 | Q4262 | JZ | Unfavorable |
| | 3 | 08/24/2023 | 15275 | | Unfavorable |
| | 3 | 07/12/2023 | 15276 | | Unfavorable |
| | 3 | 07/12/2023 | Q4262 | JZ | Unfavorable |
| | 3 | 07/12/2023 | 15275 | | Unfavorable |
| | 3 | 08/10/2023 | 99349 | 25 | Unfavorable |
| | 3 | 08/10/2023 | Q4262 | JZ | Unfavorable |
| | 3 | 08/10/2023 | 15275 | | Unfavorable |
| | 3 | 08/10/2023 | Q4262 | JZXU | Unfavorable |

DEPARTMENT OF HEALTH AND HUMAN SERVICES (DHHS) / DEPARTMENTAL APPEALS BOARD Form DAB-101 (12/19)

**REQUEST FOR REVIEW OF ADMINISTRATIVE LAW JUDGE (ALJ) MEDICARE DECISION / DISMISSAL**

| 1. APPELLANT (the party requesting review) | 2. ALJ APPEAL NUMBER (on the decision or dismissal) |
|---|---|
| 3. BENEFICIARY* | 4. MEDICARE NUMBER (Health Insurance Claim Number (HICN) or Medicare Beneficiary Identifier (MBI))* |

*If the request involves multiple claims or multiple beneficiaries, attach a list of beneficiaries, Medicare numbers, and any other information to identify all claims being appealed.

| 5. PROVIDER, PRACTITIONER, OR SUPPLIER | 6. SPECIFIC ITEM(S) OR SERVICE(S) |
|---|---|

7. Medicare claim type: ☐ Part A ☐ Part B ☐ Part C - Medicare Advantage
☐ Part D - Medicare Prescription Drug Plan ☐ Entitlement/enrollment for Part A or Part B

8. Does this request involve authorization for an item or service that has not yet been furnished?
☐ Yes If Yes, skip to Block 9.
☐ No If No, Specific Dates of Service:

9. If the request involves authorization for a prescription drug under Medicare Part D, would application of the standard appellate timeframe seriously jeopardize the beneficiary's life, health, or ability to regain maximum function (as documented by a physician) such that expedited review is appropriate? ☐ Yes ☐ No

I request that the Medicare Appeals Council review the ALJ's ☐ decision or ☐ dismissal order [check one] dated__________________________. I disagree with the ALJ's action because (specify the parts of the ALJ's decision or dismissal you disagree with and why you think the ALJ was wrong):

________________________________________________________

________________________________________________________

________________________________________________________

________________________________________________________

(Attach additional sheets if you need more space)

**PLEASE ATTACH A COPY OF THE ALJ DECISION OR DISMISSAL ORDER YOU ARE APPEALING.**

| | | | | | |
|---|---|---|---|---|---|
| DATE | | | DATE | | |
| APPELLANT'S NAME (the party requesting review) | | | REPRESENTATIVE'S NAME (include signed appointment of representative if not already submitted) | | |
| ADDRESS | | | ADDRESS | | |
| CITY, STATE, ZIP CODE | | | CITY, STATE, ZIP CODE | | |
| TELEPHONE NUMBER | FAX NUMBER | E-MAIL | TELEPHONE NUMBER | FAX NUMBER | E-MAIL |

(SEE FURTHER INSTRUCTIONS ON PAGE 2)

If you have additional evidence, submit it with this request for review. If you need more time, you must request an extension of time in writing now, explaining why you are unable to submit the evidence or legal argument now.

*If you are a provider, supplier, or a beneficiary represented by a provider or supplier, and your case was reconsidered by a Qualified Independent Contractor (QIC), the Medicare Appeals Council will not consider new evidence related to issues the QIC has already considered unless you show that you have a good reason for submitting it for the first time to the Medicare Appeals Council.*

**IMPORTANT: Include the HICN or MBI and ALJ Appeal Number on any letter or other material you submit.**

This request must be received within 60 calendar days after you receive the ALJ's decision or dismissal, unless we extend the time limit for good cause. We assume you received the decision or dismissal 5 calendar days after it was issued, unless you show you received it later. If this request will not be received within 65 calendar days from the date on the decision or dismissal order, please explain why on a separate sheet.

---

You must file your request for review in writing with the Medicare Appeals Council at:

Department of Health and Human Services
Departmental Appeals Board
Medicare Appeals Council, MS 6127
Cohen Building Room G-644
330 Independence Ave., S.W.
Washington, D.C. 20201

You may send the request for review by U.S. Mail, a common carrier such as FedEx, or by fax to (202) 565-0227. If you send a fax, please do not also mail a copy. ***You must send a copy of your appeal to the other parties and indicate that all parties, to include all beneficiaries, have been copied on the request for review. For claims involving multiple beneficiaries, you may submit a copy of the cover letters issued or a spreadsheet of the beneficiaries and addresses who received a copy of the request for review.***

If you have any questions about your request for review or wish to request expedited review of a claim involving authorization of your prescription drug under Medicare Part D, you may call the Medicare Appeals Council's staff in the Medicare Operations Division of the Departmental Appeals Board at (202) 565-0100. You may also visit our web site at www.hhs.gov/dab for additional information on how to file your request for review.

## PRIVACY ACT STATEMENT

The collection of information on this form is authorized by the Social Security Act (section 205(a) of title II, section 702 of title VII, section 1155 of Title XI, and sections 1852(g)(5), 1869(b)(1), 1871, 1872, and 1876(c)(5)(B) of title XVIII, as appropriate). The information provided will be used to further document your claim. Information requested on this form is voluntary, but failure to provide all or any part of the requested information may affect the determination of your claim. Information you furnish on this form may be disclosed by the Department of Health and Human Services or the Social Security Administration to another person or governmental agency only with respect to programs under the Social Security Act and to comply with Federal laws requiring the disclosure of information or the exchange of information between the Department of Health and Human Services, the Social Security Administration, or other agencies.

**Department of Health and Human Services**
**OFFICE OF MEDICARE HEARINGS AND APPEALS**
**Irvine, CA**

| | | | |
|---|---|---|---|
| Appeal of: | **QUANTUM PRACTITIONER SERVICES LLC** | OMHA Appeal No.: | **3-14553059676** |
| Beneficiary: | **Multiple** | Medicare Part: | **B** |
| Medicare No.: | **Multiple** | Before: | **Sean McKee**<br>Administrative Law Judge |

Index of the Administrative Record and Exhibit List

| **Exhibit Record** | **Administrative File Reference** File Name | Page Range | | |
|---|---|---|---|---|
| Medical & Related: Medical Records | File 1 | 372 | : | 455 |
| Medical & Related: Medical Records | File 1 | 456 | : | 545 |
| Medical & Related: Medical Records | File 1 | 546 | : | 773 |
| Medical & Related: Medical Records | File 4 | 89 | : | 260 |
| Medical & Related: Medical Records | File 4 | 261 | : | 438 |
| Medical & Related: Medical Records | File 4 | 439 | : | 825 |
| Medical & Related: Medical Records | File 4 | 1171 | : | 1196 |
| Medical & Related: Medical Records | File 4 | 1197 | : | 1299 |
| Medical & Related: Medical Records | File 4 | 1300 | : | 1415 |
| Position Statements: Appellant | File 21 | 1 | : | 626 |
| Procedural - CMS Levels: Request for Reconsideration | File 1 | 1 | : | 371 |
| Procedural - CMS Levels: EFFECTUATION ACK | File 19 | 1 | : | 4 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 2 | 1 | : | 3 |
| Procedural - CMS Levels: additional information | File 3 | 1 | : | 1 |
| Procedural - CMS Levels: Request for Redetermination | File 4 | 1 | : | 88 |
| Procedural - CMS Levels: MEDICARE DECISION | File 4 | 826 | : | 1070 |
| Procedural - CMS Levels: MEDICARE APPEAL DECISION | File 4 | 1070 | : | 1170 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 6 | 1 | : | 3 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 7 | 1 | : | 3 |
| Procedural - CMS Levels: RECONSIDERATION DECISION | File 8 | 1 | : | 44 |
| Procedural - CMS Levels: REDET CASE FILE REQUEST | File 9 | 1 | : | 5 |
| Procedural - OMHA Level: Notice of Hearing | File 10 | 1 | : | 13 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 11 | 1 | : | 3 |
| Procedural - OMHA Level: amended noh | File 12 | 1 | : | 9 |
| Procedural - OMHA Level: Report of contact | File 13 | 1 | : | 1 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 14 | 1 | : | 3 |
| Procedural - OMHA Level: request for case file | File 15 | 1 | : | 4 |
| Procedural - OMHA Level: second amended noh | File 16 | 1 | : | 9 |
| Procedural - OMHA Level: fourth amended noh | File 17 | 1 | : | 9 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 18 | 1 | : | 3 |
| Procedural - OMHA Level: Report of contact | File 20 | 1 | : | 1 |

| | | | |
|---|---|---|---|
| Procedural - OMHA Level: General | File 23 | 1 | : 1 |
| Procedural - OMHA Level: SIGHNED DECISION | File 24 | 1 | : 14 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 5 | 1 | : 30 |
| Proceeding (Audios): Hearing audio | File 22 | 1 | : 1 |

**Exhibit Records for beneficiary D. O[redacted]**

**Administrative File Reference**

| | File Name | Page Range | |
|---|---|---|---|
| Medical & Related: Medical Records | File 1 | 372 | : 455 |
| Medical & Related: Medical Records | File 4 | 89 | : 260 |
| Medical & Related: Medical Records | File 4 | 1197 | : 1299 |
| Position Statements: Appellant | File 21 | 1 | : 626 |
| Procedural - CMS Levels: Request for Reconsideration | File 1 | 1 | : 371 |
| Procedural - CMS Levels: EFFECTUATION ACK | File 19 | 1 | : 4 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 2 | 1 | : 3 |
| Procedural - CMS Levels: additional information | File 3 | 1 | : 1 |
| Procedural - CMS Levels: Request for Redetermination | File 4 | 1 | : 88 |
| Procedural - CMS Levels: MEDICARE DECISION | File 4 | 826 | : 1070 |
| Procedural - CMS Levels: MEDICARE APPEAL DECISION | File 4 | 1070 | : 1170 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 6 | 1 | : 3 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 7 | 1 | : 3 |
| Procedural - CMS Levels: RECONSIDERATION DECISION | File 8 | 1 | : 44 |
| Procedural - CMS Levels: REDET CASE FILE REQUEST | File 9 | 1 | : 5 |
| Procedural - OMHA Level: Notice of Hearing | File 10 | 1 | : 13 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 11 | 1 | : 3 |
| Procedural - OMHA Level: amended noh | File 12 | 1 | : 9 |
| Procedural - OMHA Level: Report of contact | File 13 | 1 | : 1 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 14 | 1 | : 3 |
| Procedural - OMHA Level: request for case file | File 15 | 1 | : 4 |
| Procedural - OMHA Level: second amended noh | File 16 | 1 | : 9 |
| Procedural - OMHA Level: fourth amended noh | File 17 | 1 | : 9 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 18 | 1 | : 3 |
| Procedural - OMHA Level: Report of contact | File 20 | 1 | : 1 |
| Procedural - OMHA Level: General | File 23 | 1 | : 1 |
| Procedural - OMHA Level: SIGHNED DECISION | File 24 | 1 | : 14 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 5 | 1 | : 30 |
| Proceeding (Audios): Hearing audio | File 22 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

Index of the Administrative Record and Exhibit List

**Exhibit Records for beneficiary J. S[redacted]** **Administrative File Reference**

| | File Name | Page Range | |
|---|---|---|---|
| Medical & Related: Medical Records | File 1 | 456 | : 545 |
| Medical & Related: Medical Records | File 4 | 261 | : 438 |
| Medical & Related: Medical Records | File 4 | 1300 | : 1415 |
| Position Statements: Appellant | File 21 | 1 | : 626 |
| Procedural - CMS Levels: Request for Reconsideration | File 1 | 1 | : 371 |
| Procedural - CMS Levels: EFFECTUATION ACK | File 19 | 1 | : 4 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 2 | 1 | : 3 |
| Procedural - CMS Levels: additional information | File 3 | 1 | : 1 |
| Procedural - CMS Levels: Request for Redetermination | File 4 | 1 | : 88 |
| Procedural - CMS Levels: MEDICARE DECISION | File 4 | 826 | : 1070 |
| Procedural - CMS Levels: MEDICARE APPEAL DECISION | File 4 | 1070 | : 1170 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 6 | 1 | : 3 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 7 | 1 | : 3 |
| Procedural - CMS Levels: RECONSIDERATION DECISION | File 8 | 1 | : 44 |
| Procedural - CMS Levels: REDET CASE FILE REQUEST | File 9 | 1 | : 5 |
| Procedural - OMHA Level: Notice of Hearing | File 10 | 1 | : 13 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 11 | 1 | : 3 |
| Procedural - OMHA Level: amended noh | File 12 | 1 | : 9 |
| Procedural - OMHA Level: Report of contact | File 13 | 1 | : 1 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 14 | 1 | : 3 |
| Procedural - OMHA Level: request for case file | File 15 | 1 | : 4 |
| Procedural - OMHA Level: second amended noh | File 16 | 1 | : 9 |
| Procedural - OMHA Level: fourth amended noh | File 17 | 1 | : 9 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 18 | 1 | : 3 |
| Procedural - OMHA Level: Report of contact | File 20 | 1 | : 1 |
| Procedural - OMHA Level: General | File 23 | 1 | : 1 |
| Procedural - OMHA Level: SIGHNED DECISION | File 24 | 1 | : 14 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 5 | 1 | : 30 |
| Proceeding (Audios): Hearing audio | File 22 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

Index of the Administrative Record and Exhibit List

| Exhibit Records for beneficiary R. M[redacted] | Administrative File Reference | | |
|---|---|---|---|
| | File Name | Page Range | |
| Medical & Related: Medical Records | File 1 | 546 | : 773 |
| Medical & Related: Medical Records | File 4 | 439 | : 825 |
| Medical & Related: Medical Records | File 4 | 1171 | : 1196 |
| Position Statements: Appellant | File 21 | 1 | : 626 |
| Procedural - CMS Levels: Request for Reconsideration | File 1 | 1 | : 371 |
| Procedural - CMS Levels: EFFECTUATION ACK | File 19 | 1 | : 4 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 2 | 1 | : 3 |
| Procedural - CMS Levels: additional information | File 3 | 1 | : 1 |
| Procedural - CMS Levels: Request for Redetermination | File 4 | 1 | : 88 |
| Procedural - CMS Levels: MEDICARE DECISION | File 4 | 826 | : 1070 |
| Procedural - CMS Levels: MEDICARE APPEAL DECISION | File 4 | 1070 | : 1170 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 6 | 1 | : 3 |
| Procedural - CMS Levels: QIC Acknowledgement Letter | File 7 | 1 | : 3 |
| Procedural - CMS Levels: RECONSIDERATION DECISION | File 8 | 1 | : 44 |
| Procedural - CMS Levels: REDET CASE FILE REQUEST | File 9 | 1 | : 5 |
| Procedural - OMHA Level: Notice of Hearing | File 10 | 1 | : 13 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 11 | 1 | : 3 |
| Procedural - OMHA Level: amended noh | File 12 | 1 | : 9 |
| Procedural - OMHA Level: Report of contact | File 13 | 1 | : 1 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 14 | 1 | : 3 |
| Procedural - OMHA Level: request for case file | File 15 | 1 | : 4 |
| Procedural - OMHA Level: second amended noh | File 16 | 1 | : 9 |
| Procedural - OMHA Level: fourth amended noh | File 17 | 1 | : 9 |
| Procedural - OMHA Level: Response to Notice of Hrg | File 18 | 1 | : 3 |
| Procedural - OMHA Level: Report of contact | File 20 | 1 | : 1 |
| Procedural - OMHA Level: General | File 23 | 1 | : 1 |
| Procedural - OMHA Level: SIGHNED DECISION | File 24 | 1 | : 14 |
| Procedural - OMHA Level: Request for ALJ Hearing | File 5 | 1 | : 30 |
| Proceeding (Audios): Hearing audio | File 22 | 1 | : 1 |

To protect beneficiary privacy, names and references to other individuals have been removed from the beneficiary copies of the Administrative Record and Exhibit List.

## ATTACHMENT A

| Beneficiary Name | Medicare No. | Date(s) of Service |
|---|---|---|
| M[redacted]R. | [redacted] | 05/25/2023 - 06/28/2023 |
| S[redacted]J. | [redacted] | 07/06/2023 - 08/24/2023 |
| O[redacted]D. | [redacted] | 06/08/2023 - 08/30/2023 |