# Complaint Exhibit 1

JNCN - JNCN213M - 000361 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 31, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901010 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167000 |
| Service Date: | May 25, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | May 25, 2023 |
| A claim was submitted for: | • Q4262 XU - 51 units of the Dual layer impax membrane, per square centimeter |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $55,597.75 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 51 units of the Dual layer impax membrane, per square centimeter (Q4262 XU). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 XU x 51) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.” Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products , the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN213M - 000361 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000532 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901011 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167010 |
| Service Date: | May 25, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | May 25, 2023 |
| A claim was submitted for: | • Q4262 76 - 61 units of the Dual layer impax membrane, per square centimeter |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $66,499.27 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 61 units of the dual layer impax membrane, per square centimeter (Q4262 76). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 XU x 51) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN211M - 000532 - 003

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN211M - 000532 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000422 - 002

CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901012 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167020 |
| Service Date: | May 25, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|
| |

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | May 25, 2023 |
| A claim was submitted for: | • 15277 - Skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears, aroun<br>• Q4262 - 63 units of the Dual layer impax membrane, per square centimeter |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $68,931.21 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears, aroun (15277) and 63 units of the Dual layer impax membrane, per square centimeter (Q4262). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 63, Q4262 x 65) and skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15277) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.” Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15277) is also considered not reasonable and necessary. Therefore, the service cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower

Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000025 - 002

CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901016 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167070 |
| Service Date: | May 25, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

### Summary of Facts

| | |
|---|---|
| r: | Quantum Practitioner Service |
| f Service: | May 25, 2023 |
| n was submitted for: | • Q4262 XU - 41 units of the Dual Layer Imax Membrane, per square (sq) centimeter |
| tial determination on this claim was on: | May 08, 2024 |
| services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| services were initially allowed, but following a post claim review, a refund for ,708.17 was requested for the amount paid on the services referenced above. | |
| e received a request for redetermination on: | June 05, 2024 |
| ecords submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 41 units of the Dual Layer Imax Membrane, per square (sq) centimeter (Q4262 XU). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 XU x 41) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN211M - 000025 - 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000258 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901024 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167030 |
| Service Date: | June 01, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 01, 2023 |
| A claim was submitted for: | • 15277 - Skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears, aroun<br>• Q4262 - 65 units of the Dual layer impax membrane, per square centimeter |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $71,093.10 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears, aroun (15277) and 65 units of the Dual layer impax membrane, per square centimeter (Q4262). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

JNCN - JNCN211M - 000258 - 003

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 65) and skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15277) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.” Therefore, this service cannot be allowed. The skin substitute graft was denied as not reasonable and necessary; therefore, the related skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15277) is also considered not reasonable and necessary. Therefore, the service cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

## Who is Responsible for the Bill?

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products and the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

## What to Include in Your Request for a Reconsideration of This Appeal

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000066 - 002

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901013 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167040 |
| Service Date: | June 01, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

### Summary of Facts

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 01, 2023 |
| A claim was submitted for: | • Q4262 76 - 60 units of the Dual layer impax membrane, per square centimeter |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $65,409.12 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 60 units of the Dual layer impax membrane, per square centimeter (Q4262 76). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76 x 60) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN211M - 000066 - 004 of 007

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000101 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901014 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167050 |
| Service Date: | June 01, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 01, 2023 |
| A claim was submitted for: | • Q4262 XU - 50 units of the Dual layer impax membrane, per square centimeter |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $54,522.16 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 50 units of the Dual layer impax membrane, per square centimeter (Q4262 XU). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 XU x 50) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN211M - 000101 - 003

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.” Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN211M - 000101 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights


000101 0004 0004 000
094965-O02-0

JNCN - JNCN211M - 000346 - 002

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901015 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167060 |
| Service Date: | June 01, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

### Summary of Facts

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 01, 2023 |
| A claim was submitted for: | • Q4262 XU - 41 units of the Dual layer impax membrane, per square centimeter |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $44,708.17 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 41 units of the Dual Layer Imax Membrane, per square centimeter (Q4262 XU). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 XU x 41) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN211M - 000346 - 003 of 004

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products , the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN211M - 000346 - 004 of 007

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000187 - 002 of 007

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901017 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167080 |
| Service Date: | June 08, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] Ma[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|
| |

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 08, 2023 |
| A claim was submitted for: | • Q4262 5976 - 40 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $43,606.08 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 40 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 5976). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 5976 x 40) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN211M - 000187 - 003 of 004

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment. The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells,

Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN211M - 000187 - 004 of 007

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901018 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167090 |
| Service Date: | June 08, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 08, 2023 |
| A claim was submitted for: | • Q4262 59 - 50 units of the Dual layer impax membrane, per square centimeter |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $54,507.60 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 50 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 59). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the 50 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 59) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed. The skin substitute graft was denied as not reasonable and necessary; therefore, the related skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15277) is also considered not reasonable and necessary. Therefore, the service cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000248 - 002 ...

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901025 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167100 |
| Service Date: | June 08, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 08, 2023 |
| A claim was submitted for: | • 15277 - Skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears, aroun |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $233.28 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears, aroun (15277). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15277) as reasonable and necessary. The services were initially

denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15277) is also considered not reasonable and necessary. Therefore, the service cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

JNCN - JNCN211M - 000248 - 004

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000009 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901019 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167110 |
| Service Date: | June 08, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted]

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 08, 2023 |
| A claim was submitted for: | • Q4262 76 - 61 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $66,517.03 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 61 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the 61 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN211M - 000009 - 003

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products , the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN211M - 000009 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000217 - 002

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901022 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167140 |
| Service Date: | June 08, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

| **Summary of Facts** | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 08, 2023 |

| | |
|---|---|
| A claim was submitted for: | • 15278 - Skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $64.27 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15278). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15278) as reasonable and necessary. The skin substitute graft was denied as not reasonable and necessary; therefore, the related skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15278) is also considered not reasonable and necessary. Therefore, the service cannot be approved.

The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000216 - 002

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901020 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167120 |
| Service Date: | June 28, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 28, 2023 |
| A claim was submitted for: | • 15278 - Skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears, aroun<br>• Q4262 - 60 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $65,473.39 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears, aroun (15278) and 60 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 60) and skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15278) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related skin substitute graft to wound 100.0 sq cm or more of face, scalp, eyelids, mouth, neck, ears (15278) is also considered not reasonable and necessary. Therefore, the service cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual,

Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products and Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

JNCN - JNCN211M - 000216 - 004 ...

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN211M - 000137 - 002

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 29, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901021 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167130 |
| Service Date: | June 28, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | R[redacted] M[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to R[redacted] M[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN211M - 000137 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000494 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901034 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167260 |
| Service Date: | June 08, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 08, 2023 |
| A claim was submitted for: | • Q4262 XU - 44 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $47,966.69 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

**Decision**

We have determined that Medicare cannot make payment on the 44 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm)(Q4262 XU). We have also determined that the provider is responsible for the cost of the services.

**Explanation of Decision**

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 XU x 44) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN212M - 000494 - 003 of 004

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.” Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN212M - 000494 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000506 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901035 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167270 |
| Service Date: | June 08, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 08, 2023 |
| A claim was submitted for: | • Q4262 76 - 35 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $38,155.32 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 35 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76 x 35) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN212M - 000506 - 003 of 004

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.” Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products , the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000117 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901036 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167280 |
| Service Date: | June 08, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

## Summary of Facts

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 08, 2023 |
| A claim was submitted for: | • Q4262 7659 - 35 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $38,155.32 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 35 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 7659). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 7659 x 35) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN212M - 000117 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000146 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901023 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167160 |
| Service Date: | June 15, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted]

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 15, 2023 |
| A claim was submitted for: | • Q4262 76 - 40 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $43,606.08 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 40 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76 x 40) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN212M - 000146 - 003 of 004

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN212M - 000146 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000365 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901026 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167180 |
| Service Date: | June 15, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted]

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 15, 2023 |
| A claim was submitted for: | • Q4262 XU - 28 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $30,524.26 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 28 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 XU). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 XU x 28) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN212M - 000385 - 003 of 004

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.” Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN212M - 000365 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000190 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901027 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167190 |
| Service Date: | June 15, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted]

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

### Summary of Facts

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 15, 2023 |
| A claim was submitted for: | • 15273 - Skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm or 1% body area<br>• Q4262 - 60 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $65,619.20 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm or 1% body area (15273) and 60 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 60) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) is also considered not reasonable and necessary. Therefore, the service cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD)

L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products and the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000208 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901029 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167210 |
| Service Date: | June 21, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 21, 2023 |
| A claim was submitted for: | • 15273 - Skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 square centimeter<br>• 15274 - Skin substitute graft to wound 100.0 square centimeter or more of trunk, arms, or legs, each additional 100.0 square centimeter<br>• Q4262 - 65 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $71,125.76 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 square centimeter (15273), Skin substitute graft to wound 100.0 square centimeter or more of trunk, arms, or legs, each additional 100.0 square centimeter (15274) and 65 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 65), application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) and skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, each additional 100.0 sq cm (15274) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and

services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) and skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, each additional 100.0 sq cm (15274) are also considered not reasonable and necessary. Therefore, the services cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the

overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000415 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901030 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167220 |
| Service Date: | June 21, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | [redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to [redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 21, 2023 |
| A claim was submitted for: | • Q4262 76 - 63 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $68,679.58 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 63 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76 x 63) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN212M - 000415 - 003 of 004

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products , the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000412 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901031 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167230 |
| Service Date: | June 28, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|
| |

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 28, 2023 |
| A claim was submitted for: | • 15273 - Skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm<br>• 15274 - Skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, each additional 100.0 sq<br>• Q4262 - 60 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $65,675.00 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273), skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, each additional 100.0 sq (15274) and 60 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 60), application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) and skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, each additional 100.0 sq cm (15274) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and

services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) and skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, each additional 100.0 sq cm (15274) are also considered not reasonable and necessary. Therefore, the services cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities and the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the

overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000217 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901032 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167240 |
| Service Date: | June 28, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 28, 2023 |
| A claim was submitted for: | • Q4262 76 - 40 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $43,606.08 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 40 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 76 x 40) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products , the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN212M - 000217 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000266 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901033 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167250 |
| Service Date: | June 28, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|
| |

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | June 28, 2023 |
| A claim was submitted for: | • Q4262 XU - 28 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $30,524.26 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 28 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 XU). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 XU x 28) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000587 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

# MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901028 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167200 |
| Service Date: | July 06, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] C[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] C[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

## Summary of Facts

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | July 06, 2023 |
| A claim was submitted for: | • 15273 - Skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 square centimeter<br>• Q4262 JZ - 62 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $67,799.50 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 square centimeter (15273) and 62 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ x 62) and application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) is also considered not reasonable and necessary. Therefore, the service cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit

Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000257 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901037 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167290 |
| Service Date: | July 13, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] Oc[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

### Summary of Facts

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | July 13, 2023 |
| A claim was submitted for: | • 15273 - skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm<br>• Q4262 JZ - 62 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $67,799.50 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) and 62 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified

Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ x 62) and application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.” Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) is also considered not reasonable and necessary. Therefore, the service cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

## Who is Responsible for the Bill?

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities and the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

## What to Include in Your Request for a Reconsideration of This Appeal

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

JNCN - JNCN212M - 000257 - 004 of 004

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000600 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901038 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167300 |
| Service Date: | July 13, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|
| |

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | July 13, 2023 |
| A claim was submitted for: | • Q4262 JZXU - 34 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $37,065.17 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 34 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZXU). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ x 34) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

JNCN - JNCN212M - 000600 - 003 of 004

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000134 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901040 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167330 |
| Service Date: | July 26, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

### Summary of Facts

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | July 26, 2023 |
| A claim was submitted for: | • 15273 - Skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm<br>• Q4262 JZ - 62 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $67,799.50 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the skin substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) and 62 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified

Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ x 62) and application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues.” Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member.” Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin of substitute graft to wound 100.0 sq cm or more of trunk, arms, or legs, 100.0 sq cm (15273) is also considered not reasonable and necessary. Therefore, the service cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

## Who is Responsible for the Bill?

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities and the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

## What to Include in Your Request for a Reconsideration of This Appeal

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000131 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901041 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167340 |
| Service Date: | July 26, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | July 26, 2023 |
| A claim was submitted for: | • Q4262 JZXU - 58 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $63,228.82 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 58 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZXU). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZXU x 58) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The

subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the

Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

JNCN - JNCN212M - 000131 - 004 of 004

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000210 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901042 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167350 |
| Service Date: | August 09, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | [redacted] [redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to [redacted] [redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** |
|---|

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | August 09, 2023 |
| A claim was submitted for: | • 99349 25 - Residence visit for established patient with moderate level of medical decision making, per day<br>• 15271 - Application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound<br>• 15272 - Application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq cm<br>• Q4262 JZ - 64 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The cost of care before and after the surgery or procedure is included in the approved amount for that service.<br>• The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $69,989.63 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, |

| | |
|---|---|
| | Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

**Decision**

We have determined that Medicare cannot make payment on the residence visit for established patient with moderate level of medical decision making, per day, if (99349 25), the application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound (15271), the application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq cm (15272) and 64 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ). We have also determined that the provider is responsible for the cost of the services.

**Explanation of Decision**

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 64), application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound (15271), application of skin substitute (wound surface up to 100 sq cm) to trunk, arms, or legs (15272 x 2) and residence visit for established patient with moderate level of medical decision making, per day (99349 25) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG

letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound (15271) and application of skin substitute (wound surface up to 100 sq cm) to trunk, arms, or legs (15272 x 2) are also considered not reasonable and necessary. The documentation did not support a separate and distinct evaluation and management service outside of the minor procedure performed/billed on the same date of service. Therefore, the residence visit for established patient with moderate level of medical decision making, per day (99349 25) is not supported. Therefore, the services cannot be allowed. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-08, Medicare Program Integrity Manual, Chapter 3, Section 3.6.2.2 and The Centers for Medicare & Medicaid Services (CMS) Internet Only Manual (IOM) Publication 100-04, Medicare Claims Processing Manual, Chapter 12, Section 40.1(C) were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In the case of the application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound (15271), the application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq cm (15272) and 64 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ), we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-08, Medicare Program Integrity Manual, Chapter 3, Section 3.6.2.2 and The Centers for Medicare & Medicaid

Services (CMS) Internet Only Manual (IOM) Publication 100-04, Medicare Claims Processing Manual, Chapter 12, Section 40.1(C) and the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In the case of the residence visit for established patient with moderate level of medical decision making, per day, if (99349 25), we find that the provider is at fault (Medicare Financial Management Manual 100-6 Chapter 3 Sections 70 and 90). Providers are responsible for being aware of applicable billing requirements and for meeting all the coding guidelines listed in the Current Procedural Terminology-4 (CPT- 4), Coding Clinic for ICD-9/ICD-10, Coding Clinic for Healthcare Common Procedural Coding System (HCPCS), and any coding requirements listed in CMS manuals or Medicare Administrative Contractors (MAC) articles Medicare Program Integrity Manual, Chapter 3, Section 3.6.2.4. In the case of overlapping claims or duplicate payments, the provider does not have a reasonable basis for assuming that the total payment the provider received was correct and thus should have questioned it.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice and documentation to support the evaluation and management service to be separately identifiable from the skin substitute service provided on the same day.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000189 - 002 of 004

CMS CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157257590 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167360 |
| Service Date: | August 16, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

**Summary of Facts**

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | August 16, 2023 |
| A claim was submitted for: | • 15271 - Application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound<br>• 15272 - two units of the Application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq cm<br>• Q4262 JZ - 64 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $69,904.34 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

JNCN - JNCN212M - 000189 - 003 of 004

## Decision

We have determined that Medicare cannot make payment on the application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound (15271), two units of the application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq cm of (15272) and 64 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm)(Q4262 JZ). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 64), application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound (15271) and application of skin substitute (wound surface up to 100 sq cm) to trunk, arms, or legs (15272 x 2) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and

services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound (15271) and application of skin substitute (wound surface up to 100 sq cm) to trunk, arms, or legs (15272 x 2) are also considered not reasonable and necessary. Therefore, the services cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities and the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the

overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000283 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

| | |
|---|---|
| In an inquiry refer to: | 8724157901039 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167320 |
| Service Date: | August 30, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | D[redacted] O[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to D[redacted] O[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

### Summary of Facts



000283 0002 0004 000

| | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | August 30, 2023 |
| A claim was submitted for: | • 15271 - Application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound<br>• 15272 - Application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq cm<br>• Q4262 JZ - 64 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $69,904.34 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound (15271), the application of skin substitute graft to wound of trunk, arms, or legs, each additional 25.0 sq cm (15272) and 64 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 64), application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound (15271) and application of skin substitute (wound surface up to 100 sq cm) to trunk, arms, or legs (15272 x 2) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, “No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and

services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin substitute graft to wound of trunk, arms, or legs, 25.0 sq cm or less of wound (15271) and application of skin substitute (wound surface up to 100 sq cm) to trunk, arms, or legs (15272 x 2) are also considered not reasonable and necessary. Therefore, the services cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities and the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the

JNCN - JNCN212M - 000283 - 004 of 004

overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000044 - 002 of 003

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

NICHOLSON & EASTIN, LLP
1330 SE 4TH AVENUE, SUITE J
FORT LAUDERDALE, FL 33316

| | |
|---|---|
| In an inquiry refer to: | 8724157901043 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167370 |
| Service Date: | July 06, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | J[redacted] S[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to J[redacted] S[redacted]

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | July 06, 2023 |
| A claim was submitted for: | • 15275 - Application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $105.29 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the Application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified

JNCN - JNCN212M - 000044 - 003 of 003

Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) as reasonable and necessary. The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) is also considered not reasonable and necessary. Therefore, the service cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000202 - 002 of 005

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 30, 2024

NICHOLSON & EASTIN, LLP
1330 SE 4TH AVENUE, SUITE J
FORT LAUDERDALE, FL 33316

| | |
|---|---|
| In an inquiry refer to: | 8724157901047 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167410 |
| Service Date: | July 12, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | J[redacted] [redacted] S[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to J[redacted] [redacted] S[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

## ...y of Facts

| | |
|---|---|
| ...: | Quantum Practitioner Service |
| ...service: | July 12, 2023 |
| ...was submitted for: | • 15275 - Application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye<br>• 15276 - two units of the Application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye<br>• Q4262 JZ - 65 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| ...nitial determination on this claim was ...le on: | May 08, 2024 |
| ...e services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| ...ne services were initially allowed, but following a post claim review, a refund for ...69,919.18 was requested for the amount paid on the services referenced above. | |
| ...Ve received a request for redetermination on: | June 05, 2024 |
| ...Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

JNCN - JNCN212M - 000202 - 003 of 004

## Decision

We have determined that Medicare cannot make payment on the application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275), two units of the application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15276) and 65 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 65), application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) and application of skin substitute graft to face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits, total wound surface area up to 100 sq cm; each additional 25 sq cm wound surface area (15276 x 2) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to

Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) and application of skin substitute graft to face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits, total wound surface area up to 100 sq cm; each additional 25 sq cm wound surface area (15276 x 2) are also considered not reasonable and necessary. Therefore, the services cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities and the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000173 - 002 of 004

CMS CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 30, 2024

NICHOLSON & EASTIN, LLP
1330 SE 4TH AVENUE, SUITE J
FORT LAUDERDALE, FL 33316

| | |
|---|---|
| In an inquiry refer to: | 8724157901044 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167380 |
| Service Date: | July 28, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | J[redacted] S[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to J[redacted] S[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| Summary of Facts | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | July 28, 2023 |
| A claim was submitted for: | • 15275 - Application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye<br>• 15276 - two units of the Application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye<br>• Q4262 JZ - 64 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $69,919.18 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

JNCN - JNCN212M - 000173 - 003 of 004

## Decision

We have determined that Medicare cannot make payment on the application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275), two units of the application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15276) and 64 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 x 65), application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) and application of skin substitute graft to face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits, total wound surface area up to 100 sq cm; each additional 25 sq cm wound surface area (15276 x 2) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to

Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) and application of skin substitute graft to face, scalp, eyelids, mouth, neck, ears, orbits, genitalia, hands, feet, and/or multiple digits, total wound surface area up to 100 sq cm; each additional 25 sq cm wound surface area (15276 x 2) are also considered not reasonable and necessary. Therefore, the services cannot be approved. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-02, Medicare Benefit Policy Manual, Chapter 16, Section 20 and Local Coverage Determination (LCD) L36377 for Application of Skin Substitute Grafts for Treatment of DFU and VLU of Lower Extremities and the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

JNCN - JNCN212M - 000173 - 004 of 004

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000105 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 30, 2024

NICHOLSON & EASTIN, LLP
1330 SE 4TH AVENUE, SUITE J
FORT LAUDERDALE, FL 33316

| | |
|---|---|
| In an inquiry refer to: | 8724157901049 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167430 |
| Service Date: | August 10, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | J[redacted] [redacted] S[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to J[redacted] [redacted] S[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| Summary of Facts | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | August 10, 2023 |
| A claim was submitted for: | • Q4262 JZXU - 14 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $15,262.13 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 14 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZXU). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not

JNCN - JNCN212M - 000105 - 003 of 004

support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZXU x 14) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

## Who is Responsible for the Bill?

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

## What to Include in Your Request for a Reconsideration of This Appeal

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the service should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

## Note to Medicare Physicians, Providers, and Suppliers Only:

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000078 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

NICHOLSON & EASTIN, LLP
1330 SE 4TH AVENUE, SUITE J
FORT LAUDERDALE, FL 33316

| | |
|---|---|
| In an inquiry refer to: | 8724157901048 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167420 |
| Service Date: | August 10, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | J[redacted] S[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to J[redacted] S[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| Summary of Facts | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | August 10, 2023 |
| A claim was submitted for: | • 99349 25 - Residence visit for established patient with moderate level of medical decision making, per day<br>• 15275 - Application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye<br>• Q4262 JZ - 54 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The cost of care before and after the surgery or procedure is included in the approved amount for that service.<br>• The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $59,058.79 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the |

JNCN - JNCN212M - 000078 - 003 of 004

| | |
|---|---|
| | Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the residence visit for established patient with moderate level of medical decision making, per day (99349 25), the application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) and 54 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm)(Q4262 JZ). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ x 54), application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) and residence visit for established patient with moderate level of medical decision making, per day (99349 25) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) is also considered not reasonable and necessary. The documentation did not support a separate and distinct evaluation and management service outside of the minor procedure performed/billed on the same date of service. Therefore, the residence visit for established patient with moderate level of medical decision making, per day (99349 25) is not supported. Therefore, the services cannot be allowed. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-08, Medicare Program Integrity Manual, Chapter 3, Section 3.6.2.2 and The Centers for Medicare & Medicaid Services (CMS) Internet Only Manual (IOM) Publication 100-04, Medicare Claims Processing Manual, Chapter 12, Section 40.1(C) were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-08, Medicare Program Integrity Manual, Chapter 3, Section 3.6.2.2 and The Centers for Medicare & Medicaid Services (CMS) Internet Only Manual (IOM) Publication 100-04, Medicare Claims Processing Manual, Chapter 12, Section 40.1(C) and the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient

evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice and documentation to support the evaluation and management service to be separately identifiable from the skin substitute service provided on the same day.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300

Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000231 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

## MEDICARE APPEALS DECISION

July 30, 2024

NICHOLSON & EASTIN, LLP
1330 SE 4TH AVENUE, SUITE J
FORT LAUDERDALE, FL 33316

| | |
|---|---|
| In an inquiry refer to: | 8724157901045 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167390 |
| Service Date: | August 24, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | J[redacted] S[redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to J[redacted] S[redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| Summary of Facts | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | August 24, 2023 |
| A claim was submitted for: | • Q4262 JZXU - 24 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $26,163.65 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

## Decision

We have determined that Medicare cannot make payment on the 64 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZXU). We have also determined that the provider is responsible for the cost of the services.

## Explanation of Decision

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not

JNCN - JNCN212M - 000231 - 003 of 004

support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZXU x 24) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as "articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as "(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as "the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

## Who is Responsible for the Bill?

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In this case, we find that the provider is at fault. Based on coverage limitations in the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

## What to Include in Your Request for a Reconsideration of This Appeal

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

## Note to Medicare Physicians, Providers, and Suppliers Only:

JNCN - JNCN212M - 000231 - 004 of 004

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights

JNCN - JNCN212M - 000035 - 002 of 004

CMS
CENTERS FOR MEDICARE & MEDICAID SERVICES

FIRST COAST
SERVICE OPTIONS, INC.
WHEN EXPERIENCE COUNTS & QUALITY MATTERS

**Medicare Appeals**
**P.O. Box 3411**
**Mechanicsburg, PA 17055-1850**

**MEDICARE APPEALS DECISION**

July 30, 2024

NICHOLSON & EASTIN, LLP
1330 SE 4TH AVENUE, SUITE J
FORT LAUDERDALE, FL 33316

| | |
|---|---|
| In an inquiry refer to: | 8724157901046 |
| Medicare Number: | [redacted] |
| Internal Control Number: | 9724122167400 |
| Service Date: | August 24, 2023 |
| Services provided by: | Quantum Practitioner Service |
| Services provided to: | [redacted] |

Dear Erin M. Ferber, P.A.,

This letter is to inform you of the decision on your Medicare Appeal. An appeal is a new and independent review of a claim. You are receiving this letter because you requested an appeal for the services shown below.

The appeal decision is unfavorable. Our decision is that your claim has been overpaid.

More information on the decision is provided below. If you disagree with the decision, you may appeal to a Qualified Independent Contractor (QIC). Your appeal of this decision must be made in writing and received by the QIC within 180 days of receiving this letter. You are presumed to have received this decision five days from the date of the letter unless there is evidence to show otherwise. However, if you do not wish to appeal this decision, you are not required to take any action. For more information on how to appeal this decision, see the section at the end of this letter entitled, "Important Information about Your Appeal Rights."

A copy of this letter was also sent to [redacted].

First Coast Service Options, Inc. was contracted by Medicare to review your appeal.

| **Summary of Facts** | |
|---|---|
| Provider: | Quantum Practitioner Service |
| Date of Service: | August 24, 2023 |
| A claim was submitted for: | • 99348 25 - Residence visit for established patient with low level of medical decision making, per day<br>• 15275 - Application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye<br>• Q4262 JZ - 44 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) |
| An initial determination on this claim was made on: | May 08, 2024 |
| The services were denied because: | • The cost of care before and after the surgery or procedure is included in the approved amount for that service.<br>• The information provided does not support the need for this service or item. Your claim was reviewed by our Medical Staff. |
| The services were initially allowed, but following a post claim review, a refund for $48,122.69 was requested for the amount paid on the services referenced above. | |
| We received a request for redetermination on: | June 05, 2024 |
| Records submitted with the request: | correspondence from Erin M. Ferber, P.A., an Appointment of Representative Form, the Overpayment Letter dated May 08, 2024, the Notice of Overpayment Findings Letter dated April 22, 2024, Patient Report Summaries, the Visit, Encounter and Progress Notes, the |

| | |
|---|---|
| | Treatment Goals and Plan Audits Addendums and the Home Health Certification and Plan of Care Forms. |

**Decision**

We have determined that Medicare cannot make payment on the residence visit for established patient with low level of medical decision making, per day (99348 25), the application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) and 44 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ). We have also determined that the provider is responsible for the cost of the services.

**Explanation of Decision**

The documentation received with the appeal request and provided by the Unified Program Integrity Contractor (UPIC), was reviewed by a clinician, and it does not support the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZXU x 24), application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) and residence visit for established patient with low level of medical decision making, per day (99348 25) as reasonable and necessary. The services were initially denied by the UPIC, because of the lack of supporting documentation in the medical records. The subsequent medical records submitted for appeal did not support the services as reasonable and necessary. The Impax Membrane was placed as a covering and was not anchored surgically to the wound.

Human placental tissue (amniotic membrane) provides covering and protection to the fetus. When used as a skin substitute graft for wound treatment, it is considered a non-homologous use in the recipient. This use is investigational and not approved by the Food and Drug Administration (FDA), since it lacks evidence of being safe and effective for wound treatment. The FDA regulates human cells, tissues, and cellular and tissue-based products, (HCT/P), under the regulatory requirements set forth in 21 Code of Federal Regulations (CFR) Part 1271. The HCT/Ps are defined in 21 CFR 1271.3(d) as “articles containing or consisting of human cells or tissues that are intended for implantation, transplantation, infusion, or transfer into a human recipient." Minimal manipulation is defined in 21 CFR 1271.3(f) as “(1) For structural tissue, processing that does not alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement; and (2) For cells or nonstructural tissues, processing that does not alter the relevant biological characteristics of cells or tissues." Homologous use is defined in 21 CFR 1271.3(c) as “the repair, reconstruction, replacement, or supplementation of a recipient's cells or tissues with an HCT/P that performs the same basic function or functions in the recipient as in the donor." The TRG letter clearly indicates that this product is used as a barrier or for protective covering for wounds and represents non-homologous use as noted above when used as ulcer or wound treatment.

The non-homologous use of Impax Membrane, per square centimeter (Q4262) is considered an investigational use and is not reasonable and necessary according to Section 1862(a)(1)(A) of the Social Security Act, "No payment may be made under Part A or Part B for any expenses incurred for items or services which, except for items and services described in a succeeding subparagraph, are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." Therefore, this service cannot be allowed.

The skin substitute graft was denied as not reasonable and necessary; therefore, the related application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) is also considered not reasonable and necessary. The documentation did not support a separate and distinct evaluation and management service outside of the minor procedure performed/billed on the same date of service. Therefore, the residence visit for established patient with low level of medical decision making, per day (99348 25) is not supported. Therefore, the services cannot be allowed. The Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-08, Medicare Program Integrity Manual, Chapter 3, Section 3.6.2.2 and The Centers for Medicare & Medicaid Services (CMS) Internet Only Manual (IOM) Publication 100-04, Medicare Claims Processing Manual, Chapter 12, Section 40.1(C) were utilized for this review.

**Who is Responsible for the Bill?**

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In the case of the application of skin substitute graft to wound of face, scalp, eyelids, mouth, neck, ears, around eye (15275) and 44 units of the Dual Layer Imax Membrane, per square (sq) centimeter (cm) (Q4262 JZ), we find that the provider is at fault. Based on coverage limitations in the Centers for Medicare & Medicaid Services (CMS) Internet-Only Manual (IOM) Publication 100-08, Medicare Program Integrity Manual, Chapter 3, Section 3.6.2.2 and The Centers for Medicare & Medicaid Services (CMS) Internet Only Manual (IOM) Publication 100-04, Medicare Claims Processing Manual, Chapter 12, Section 40.1(C) and the Code of Federal Regulations (CFR) 21 CFR – Food and Drugs 1271 Human Cells, Tissues, and cellular and Tissue Based Products, the provider knew or should have known the services would not be covered. Additionally, information about covered services is published to the general Medicare

community using manuals, bulletins, memoranda, etc. Information on covered services is also available on the Medicare websites (Medicare.FCSO.com and CMS.gov). Therefore, we find there is sufficient evidence that the provider of services should have known that the services would not be paid. We also find that the provider did not submit documentation to support notification was given to the beneficiary in writing, before the services were furnished, that Medicare would likely not pay for the service. Because of this, the provider is liable for the denied charges.

The Medicare law contains three provisions §1870, §1879 and §1842(l) dealing with liability for, and recovery of, individual overpayments. Section 1879 of the Social Security Act (the Act) which provides financial relief when services are found to be not medically reasonable and necessary is not applicable in cases where it has been determined that the services were not billed in compliance with the national and local coding, payment or billing requirements. Once it has been concluded that an overpayment exists (that is, a finding that payment cannot be made under the §1879 waiver of liability provisions mentioned above) a §1870(b) determination is made regarding whether the provider was without fault with respect to the overpayment.

In the case of the residence visit for established patient with low level of medical decision making, per day (99348 25), we find that the provider is at fault (Medicare Financial Management Manual 100-6 Chapter 3 Sections 70 and 90). Providers are responsible for being aware of applicable billing requirements and for meeting all the coding guidelines listed in the Current Procedural Terminology-4 (CPT- 4), Coding Clinic for ICD-9/ICD-10, Coding Clinic for Healthcare Common Procedural Coding System (HCPCS), and any coding requirements listed in CMS manuals or Medicare Administrative Contractors (MAC) articles Medicare Program Integrity Manual, Chapter 3, Section 3.6.2.4. In the case of overlapping claims or duplicate payments, the provider does not have a reasonable basis for assuming that the total payment the provider received was correct and thus should have questioned it.

As a component of the appeal we consider whether waiver of the overpayment should be granted. We determined the overpayment was initiated appropriately based on Section 1870 of the Social Security Act. The provider is responsible for repaying the overpayment amount based on the coverage limitations provided in the "Explanation of the Decision" of this letter.

**What to Include in Your Request for a Reconsideration of This Appeal**

If you do not agree with this decision, you may file a reconsideration. When submitting your reconsideration you will need to provide a Tissue Reference Group (TRG) letter supporting approval for the use of the product for wound treatment and or healing or peer reviewed literature supporting the use of the product for wound treatment and or healing to be an accepted standard of medical practice and documentation to support the evaluation and management service to be separately identifiable from the skin substitute service provided on the same day.

It will be helpful for you to provide any other documentation you believe supports the reason for a favorable decision. The documentation you provide should show why you believe the services should be given a favorable decision. Please provide the documentation with your request for an appeal to a Qualified Independent Contractor (QIC).

**Note to Medicare Physicians, Providers, and Suppliers Only:**

Any additional evidence as indicated in this section should be submitted with the request for reconsideration. All evidence must be presented before the reconsideration decision is issued. If all additional evidence as indicated above and or otherwise is not submitted prior to issuance of the reconsideration decision, you will not be able to submit any new evidence to the Administrative Law Judge or the Medicare Appeals Council unless you can demonstrate good cause for withholding the evidence from the QIC.

Note: You do not need to resubmit documentation that was submitted as part of the redetermination. The information will be forwarded to the QIC as part of the case file utilized in the reconsideration process.

Send your appeal request to:

C2C Innovative Solutions, Inc.
Part B QIC South
P.O. Box 45300
Jacksonville, FL 32232-5300

Sincerely,

S. Shoaff
Appeals Representative
First Coast Service Options, Inc.
A Medicare Contractor

Enclosure: Reconsideration Form

Enclosure: Important Information About Your Appeal Rights